1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WONDERFUL NURSERIES LLC,                    No.  1:24-cv-01601-KES-CDB

12              Plaintiff,

13        v.                                     ORDER GRANTING MOTIONS TO
                                                 INTERVENE
14   AGRICULTURAL LABOR RELATIONS
     BOARD, et al.,                              (Doc. Nos. 11, 13, 21)
15
                Defendants.
16

17        This matter is before the Court on two motions to intervene pursuant to Federal Rule of

18   Civil Procedure 24:  one filed by proposed defendant-intervenor the United Farm Workers of

19   America ("UFW"); and the other filed by proposed plaintiff-intervenors Claudia Chavez, Maria

20   Ester Gutierrez, Francisco Antonio, Erik Ferrer Chacon, Maria Chacon, Florentina Torres Cruz,

21   Ines Cruz, Gloria Gonzales, Lorenzo Hernandez, Selene Lizzaraga, Yolanda Martinez, Ana

22   Molina, Leticia Navarro, Ana Ortiz, Maria C. Pedro, Jose Ruiz, Maria C. Sanchez, Angelina

23   Torres, Etelverto Torres, and Domatila Vasquez ("the employees").  (Docs. 11, 13.)  UFW's

24   motion and the employees' motion were taken under submission on the papers pursuant to Local

25   Rule 230(g) on February 28 and March 12, 2025, respectively.  (Docs. 31, 35.)  For the reasons

26   explained below, the Court grants both motions to intervene.

27   ///

28   ///

                                                 1

1

**BACKGROUND**

2      This action presents a constitutional challenge to California Labor Code section 1164 *et*

3  *seq.*, also known as the mandatory mediation and conciliation ("MMC") provisions of

4  California's Agricultural Labor Relations Act ("ALRA").  (Doc. 1 at ¶¶ 91–204.)  On December

5  30, 2024, plaintiff Wonderful Nurseries LLC ("Wonderful")—a producer of grapevines and trees

6  for sale to commercial agricultural producers—filed a complaint initiating this action against the

7  California Agricultural Labor Relations Board and several of its members, officers, and personnel

8  (collectively "ALRB defendants").[1]  (Doc. 1.)  The claims asserted in the complaint at least in

9  part stem from a previously-pending MMC process between Wonderful and UFW—a labor union

10 which the ALRB certified as the exclusive bargaining representative of Wonderful's agricultural

11 laborers on March 4, 2024.[2]  (*Id.* at ¶¶ 16, 198–204.)  Wonderful characterizes MMC as a "highly

12 expedited, compulsory contracting process, whereby a Board-appointed 'mediator' decides the

13 terms of a collective bargaining agreement between the union and the employer, which then

14 becomes an enforceable order of the Board."  (*Id.* at ¶ 33.)

15     Prior to and immediately following the ALRB's certification of UFW, Wonderful sought

16 to halt the MMC process pending investigation into UFW's "Majority Support Petition ('MSP')

17 Election" procedures—specifically, investigation into employee allegations "that UFW

18 representatives falsely assured Wonderful's agricultural laborers that their authorization cards

19 were not a vote for the union, but were needed to obtain or confirm a $600 payment from the

20 federal government for COVID-19 related relief."  (*Id.* at ¶¶ 16, 47.)  The ALRB rejected

21 Wonderful's requests to stay the certification and ultimately affirmed an order by the

22

23 [1]  It is not necessary for purposes of this Order to set out a detailed summary of the complaint,
    which includes over 200 paragraphs spanning 67 pages.  The Court summarizes Wonderful's
24 relevant allegations here and in the analysis section below, focusing on allegations that are
    relevant to address the pending motions to intervene.
25

26 [2]  On February 10, 2025, Wonderful filed a motion for a preliminary injunction seeking to have
    defendants enjoined from enforcing the then-pending MMC process.  (Doc. 22.)  However,
27 Wonderful withdrew its motion on March 3, 2025, after the ALRB issued a "Notice of [UFW's]
    Withdrawal of Mandatory Mediation and Conciliation Request," which indicated that no further
28 MMC proceedings were expected.  (Doc. 33 at 2.)

1    investigative hearing examiner denying the request of thirteen Wonderful workers to intervene in
2    post-certification proceedings.[3]  (*Id.* at ¶¶ 48, 49.)

3        Thereafter, Wonderful challenged the MSP certification process in the Kern County
4    Superior Court and received a favorable ruling on its motion for preliminary injunction which
5    resulted in a stay of the post-certification objections and MMC proceedings.  (*Id.* at ¶¶ 52, 53.)
6    The ALRB and UFW both appealed to the Fifth District Court of Appeal, which issued a writ of
7    supersedeas staying the preliminary injunction pending the appeal or further order.  (*Id.* at ¶¶ 54–
8    57.)  The MMC process then resumed with the empaneling of a mediator on or about
9    November 12, 2024.  (*Id.* at ¶ 58.)  Wonderful alleges that, at the time it filed the complaint, it
10   was under the impression that the ALRB could issue a final decision and order imposing on it and
11   its employees an MMC-produced collective bargaining agreement as early as the end of March
12   2025.  (*Id.* at ¶ 60.)  Subsequently, Wonderful decided to wind down a portion of its business and
13   reduce its workforce, which prompted UFW to withdraw its MMC request.  (*See* Doc. 33 at 4–
14   11.)  On March 3, 2025, the ALRB issued a notice recognizing UFW's withdrawal and stating
15   that "no further MMC proceedings are expected."  (*Id.* at 14.)

16       On January 22, 2025, UFW filed a motion to intervene as a defendant in this action,
17   seeking to oppose Wonderful's challenge to the MMC statute.  (Doc. 11.)  Wonderful filed an
18   opposition to that motion on February 5, 2025, and UFW filed its reply the following day.  (Docs.
19   15, 16.)

20       The employees, who seek to vindicate their own interests as plaintiffs in this action, filed a
21   motion to intervene along with a proposed complaint on February 3, 2025.[4]  (Doc. 13.)  The
22   ALRB filed an opposition to that motion on February 18, 2025.  (Doc. 24.)  The same day,
23   Wonderful filed a statement of non-opposition to the employees' motion, indicating that it did not
24   oppose their intervention as a matter of right but did oppose their proposed complaint insofar as it

---

25   [3]  Those thirteen employees are the same individuals who seek to intervene in this action.  (*See*
26   Doc. 1 at 140 n.3.)

27   [4]  Like Wonderful's complaint, the employees' proposed complaint challenges the
     constitutionality of the MMC statute, but unlike Wonderful's complaint, the employees' proposed
28   complaint also presents a constitutional challenge to the MSP statute.  (Doc. 13-1.)

1    challenged "a different statute, i.e., Labor Code section 1156.37 ('MSP Statute'), than the statute

2    challenged by Wonderful, i.e., Labor Code section 1164 ('MMC Statute')."  (Doc. 25 at 2.)  The

3    employees filed a reply in support of their motion to intervene on February 28, 2025, clarifying

4    that they intend to amend their complaint "to excise those elements related to" the MSP statute.

5    (Doc. 32 at 2.)

**LEGAL STANDARD**

7        "[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit."

8    *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009) (citing *Marino v.

9    Ortiz*, 484 U.S. 301, 304 (1988)).  Whether made as of right or permissively, a motion to

10    intervene in a federal court suit is governed by Federal Rule of Civil Procedure 24.  *NAACP v.

11    New York*, 413 U.S. 345, 365 (1973).  Rule 24(a)(2) mandates that courts must allow anyone to

12    intervene as of right who, upon making a timely motion, "claims an interest relating to the

13    property or transaction that is the subject of the action, and is so situated that disposing of the

14    action may as a practical matter impair or impede the movant's ability to protect its interest,

15    unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24.  To satisfy the

16    requirements of Rule 24(a)(2), a prospective intervenor bears the burden of establishing that:

17
18
19
> (1) its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action.

20    *Sweet v. Cardona*, 121 F.4th 32, 47–48 (9th Cir. 2024) (quoting *Kalbers v. United States Dep't of

21    Just.*, 22 F.4th 816, 822 (9th Cir. 2021)); *see also Perry v. Proposition 8 Off. Proponents*, 587

22    F.3d 947, 950 (9th Cir. 2009) ("Failure to satisfy any one of the requirements is fatal to the

23    application, and we need not reach the remaining elements if one of the elements is not

24    satisfied.").

25        "In determining whether intervention is appropriate, [courts] are 'guided primarily by

26    practical and equitable considerations, and the requirements for intervention are broadly

27    interpreted in favor of intervention.'"  *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021)

28    (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).  "Courts are to

1    take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed

2    complaint or answer in intervention, and declarations supporting the motion as true absent sham,

3    frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th

4    Cir. 2001).

5    Rule 24 also allows for permissive intervention.  Under Rule 24(b)(1)(B) a court may

6    permit anyone to intervene who "has a claim or defense that shares with the main action a

7    common question of law or fact."  Fed. R. Civ. P. 24.  "In exercising its discretion, the court must

8    consider whether the intervention will unduly delay or prejudice the adjudication of the original

9    parties' rights."  Fed. R. Civ. P. 24(b)(3).  Permissive intervention is appropriate "where the

10   applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is

11   timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a

12   question of fact in common."  *S. California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir.

13   2002) (citation omitted).  "Even if an applicant satisfies those threshold requirements, the district

14   court has discretion to deny permissive intervention."  *Cooper*, 13 F.4th at 868 (quoting *Donnelly*

15   *v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)).

16                                   **ANALYSIS**

17   **A.      UFW's Motion to Intervene**

18   UFW argues it has satisfied the requirements to intervene as a matter of right under Rule

19   24(a)(2), and in the alternative, that it should be permitted to intervene under Rule 24(b).

20   Because the Court finds that UFW is entitled to intervene as of right, it need not address whether

21   UFW may also intervene permissively.  *See Kalbers*, 22 F.4th at 828 n.9 (declining to consider

22   permissive intervention where applicant established it was entitled to intervene as of right).

23   In opposing UFW's motion, the only aspect of UFW's Rule 24(a)(2) showing that

24   Wonderful challenges is whether UFW's interest is inadequately represented by the parties to the

25   action.  However, all the requirements for intervention as of right will be discussed as "each

26   [element] must be demonstrated in order to provide a non-party with a right to intervene."

27   *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

28

5

1      1.    Timeliness

2          Timeliness hinges on "(1) the stage of the proceeding at which an applicant seeks to

3    intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."

4    *Kalbers*, 22 F.4th at 822 (internal quotation marks and citation omitted).

5          Here, UFW moved to intervene just twenty-three days after the filing of the complaint.

6    No initial scheduling conference or substantive proceeding has occurred in this action.  The initial

7    scheduling order has yet to be issued, and this case is in the earliest stage of litigation.  The

8    motion is therefore timely.  *See, e.g.*, *Hoopa Valley Tribe v. United States Bureau of Reclamation*,

9    648 F. Supp. 3d 1196, 1200 (E.D. Cal. 2022) (finding motion to intervene filed four months after

10   original complaint and "well before any substantive matters had been heard or decided" timely).

11     2.    Significant Protectable Interest

12         "To demonstrate a significant protectable interest, an applicant must establish that the

13   interest is protectable under some law and that there is a relationship between the legally

14   protected interest and the claims at issue."  *Citizens for Balanced Use v. Montana Wilderness*

15   *Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  The relationship requirement will generally be satisfied

16   "if the resolution of the plaintiff's claims actually will affect the applicant."  *Arakaki v. Cayetano*,

17   324 F.3d 1078, 1084 (9th Cir. 2003).

18         Here, the Court agrees with UFW that its interest in reaching contracts with employers is

19   legally protected by the MMC statute.  *See Gerawan Farming, Inc. v. Agric. Lab. Rels. Bd.*, 3 Cal.

20   5th 1118, 1132 (2017) (explaining that the California Legislature was prompted to add the MMC

21   provisions to the ALRA to ensure a more effective collective bargaining process).  That interest is

22   directly related to the claims at issue in this lawsuit, which challenge the constitutionality of the

23   provisions dictating the collective bargaining process between labor unions and agricultural

24   employers like UFW and Wonderful.  The resolution of Wonderful's claims will plainly affect

25   how UFW forms contracts with employers and whether that process will occur by MMC or not.

26   Thus, UFW has a significant protectable interest in this litigation.

27   ///

28   ///

6

3.     Practical Impairment

For related reasons, UFW's interest in reaching contracts with employers will be impaired as a practical matter if Wonderful succeeds in its endeavor to invalidate the MMC statute and prevent the ALRB from enforcing it.  A ruling to that effect would substantially interfere with any ongoing or anticipated MMC proceedings involving UFW and other agricultural employers and would likely contribute to a decline in the number of executed collective bargaining agreements, contrary to UFW's stated interests.  *See Gerawan Farming, Inc.*, 3 Cal. 5th at 1132 (discussing how prior to the enactment of MMC, "agricultural employers had not agreed to a contract in about 60 percent of the cases where a labor union had been certified."); *Arakaki*, 324 F.3d at 1086 (agreeing that "a ruling in favor of Plaintiffs' equal protection challenge" to provisions allowing for the receipt of benefits to native Hawaiians would impair intervenors' ability to protect its interest in continued receipt of those benefits).

4.     Inadequacy of Representation

Turning to the only contested element, Wonderful argues that UFW's interests (to protect agricultural workers and defend the constitutionality of the MMC provisions) are adequately represented because they are identical to those of the ALRB defendants.  UFW argues its interests are inadequately represented because (1) it would suffer a different harm than the ALRB defendants if the MMC process were enjoined, and (2) "the ALRB defendants will not necessarily make the same arguments as UFW about the ineffectiveness of the ALRB in protecting farm workers or about the egregious employer misconduct that makes the MMC statute so vital." (Doc. 11-1 at 12.)

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."  *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011)).  Three factors are considered for this inquiry:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such

7

1
2

   arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

3

*Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022).

4
   The Ninth Circuit has held that "[w]hen an applicant for intervention and an existing party

5
have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*,

6
324 F.3d at 1086 (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th

7
Cir. 1997)).  But it has also recognized that the Supreme Court's opinion in *Berger v. N. Carolina*

8
*State Conf. of the NAACP*, 597 U.S. 179 (2022), "calls into question whether the application of

9
such a presumption is appropriate." *Callahan*, 42 F.4th at 1021 n.5.  Nonetheless, the "rule that a

10
proposed intervenor must make a compelling showing of inadequate representation when her

11
interest is identical to that of an existing party" remains good law following *Berger*.  *Id.* (citing

12
*Arakaki*, 324 F.3d at 1086).

13
   In arguing that its interests are not adequately represented, UFW relies on a line of cases

14
which themselves rely on the Ninth Circuit's reasoning in *Californians For Safe & Competitive*

15
*Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998).  At issue in that case was a

16
dispute over California's prevailing wage laws.  *Id.* at 1186.  In affirming the district court's order

17
granting a motion to intervene as defendants filed by the International Brotherhood of Teamsters

18
("IBT"), the Ninth Circuit found that "the employment interests of IBT's members were

19
potentially more narrow and parochial than the interests of the public at large" that were

20
represented by the defendant state agencies who enforced the wage laws at issue.  *Id.* at 1190;

21
*accord Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067–68 (9th Cir. 2018) (same

22
conclusion as to same labor union where the "facts of *Mendonca* [were] almost identical.").  That

23
"narrow and parochial" rationale has since been applied in several cases where intervenors'

24
interests diverged from those of existing parties, justifying a finding of inadequate representation.

25
*See, e.g.*, *S. California Healthcare Sys., Inc. v. City of Culver City*, No. 221CV05052MCSRAO,

26
2021 WL 4817846, at *2 (C.D. Cal. July 26, 2021) (union permitted to intervene to defend city

27
ordinance providing temporary wage supplement given the union's "narrow focus on its members

28
and the City's broader concentration on advancing the public agenda.").

1    Here, as in *Mendonca*, UFW's interests are narrower than the ALRB's broader interest in

2    generally upholding the law.  This is highlighted by the UFW's intended arguments, which

3    criticize the efficiency of the ALRB itself and are directly levied against agricultural employers

4    on behalf of UFW's members in such a way as to make the arguments ill-suited for advancement

5    by the ALRB.  The ALRB, in contrast, is an entity with "powers and responsibilities of

6    administration, particularly in conducting and certifying elections and in investigating and

7    preventing unfair labor practices," with a broader interest in upholding the law.  *Gerawan*

8    *Farming, Inc. v. Agric. Lab. Rels. Bd.*, 3 Cal. 5th 1118, 1130 (2017).  Given their different

9    positions, it cannot be said that the ALRB will "undoubtedly" make all the arguments UFW

10   intends to raise.  *Callahan*, 42 F.4th at 1020.

11   As the labor union negotiating counterparty to agricultural employers such as Wonderful

12   in the MMC regime challenged by this lawsuit, UFW offers a "necessary element" to these

13   proceedings which the ALRB may not necessarily provide.  *Id.*  The intended oppositions that the

14   ALRB and UFW filed in this case in response to Wonderful's now-withdrawn motion for a

15   preliminary injunction also provide some indication of the respective positions and potential

16   arguments the ALRB and UFW intend to raise in this action.[5]  (Docs. 27, 28-1.)  Unsurprisingly

17   their briefing shares some similarities as both oppose Wonderful's suit, but UFW adds a narrower

18   perspective particularly attuned to the bargaining unit workers it represents.  *See Sw. Ctr. for*

19   *Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (finding that "even if the [same

20   ultimate objective] presumption [against intervention] applies, it is rebutted here because

21   Applicants and Defendants do not have sufficiently congruent interests.").  For example, when

22   comparing the ALRB and UFW's arguments on the balance of equities, UFW emphasizes harms

23   that may result to its bargaining unit workers and a specific process by which that harm could be

24   minimized.  (Doc. 28-1 at 29–30.)  In contrast, the ALRB's arguments are broader and focus

25   instead on harms to the public.  (Doc. 27 at 31.)

26

27   ───────────────────
     [5] To the extent the arguments apply to MMC processes generally, they are relevant in evaluating
28   adequacy of representation, even in the absence of an active MMC process between Wonderful
     and UFW.

9

1   Wonderful notes that courts have declined to allow intervention in some instances where

2   the proposed intervenors share the same final goal as government defendants in defending a law's

3   constitutionality, but the outcome in the cases Wonderful cites was justified by additional factors

4   that are not present here to the same extent.  *See Wilson*, 131 F.3d at 1302, 1304–07 (noting that

5   the proposed intervenors relied on speculation of a future divergence of interests with the party

6   defendants in arguing inadequacy of representation and "f[ou]ght an uphill battle" based on a

7   twenty-seven month delay in seeking intervention); *Arakaki*, 324 F.3d at 1087 (reasoning that a

8   similarly-situated intervenor was already granted leave to intervene and had stated it was willing

9   to speak with and raise arguments of the proposed intervenors); *Prete v. Bradbury*, 438 F.3d 949,

10  957–59 (9th Cir. 2006) (finding intervenor-defendants' assertion of "particular expertise in the

11  subject of the dispute" to be unpersuasive and on par with the expertise of existing parties).  The

12  present case is not like the preceding cases because it originated from a MMC process involving

13  UFW, and in that context, where no other labor union has sought to intervene, UFW holds

14  narrower and more parochial interests than the ALRB, just as the unions did in *Mendonca* and

15  *Allied Concrete*.

16  This conclusion is underscored by the fact that Rule 24 must be read broadly in favor of

17  intervenors.  *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397–98 (9th Cir. 2002).

18      A liberal policy in favor of intervention serves both efficient
        resolution of issues and broadened access to the courts.  By allowing
19      parties with a *practical* interest in the outcome of a particular case to
        intervene, we often prevent or simplify future litigation involving
20      related issues; at the same time, we allow an additional interested
        party to express its views before the court.
21

22  *Id.* (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th

23  Cir.1995)).

24  For these reasons, UFW has satisfied the minimal burden of demonstrating that its

25  interests may be inadequately represented by the ALRB.  Accordingly, its motion to intervene as

26  of right pursuant to Rule 24(a)(2) is granted.

27  ///

28  ///

10

1    **B.    The Employees' Motion to Intervene**

2        The employees move to intervene both as of right and permissively under Rule 24.  The

3    ALRB defendants oppose on both grounds.  For the reasons explained below, the Court denies the

4    employees' motion to intervene as of right but grants its motion for permissive intervention.

5        1.    <u>Intervention as of Right</u>

6        As explained above, under Rule 24(a)(2), a prospective intervenor bears the burden of

7    establishing that:

8        (1) its motion is timely; (2) it has a significantly protectable interest
         relating to the subject of the action; (3) it is so situated that the
9        disposition of the action may as a practical matter impair or impede
         its ability to protect that interest; and (4) its interest is inadequately
10       represented by the parties to the action.

11    *Sweet v. Cardona*, 121 F.4th 32, 47–48 (9th Cir. 2024).  As the ALRB defendants challenge only

12    the second and third elements and the Court concludes that the employees have failed to make the

13    requisite showing to intervene as of right, the remaining elements need not be discussed.  *Perry v.*

14    *Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("Failure to satisfy any one of

15    the requirements is fatal to the application, and we need not reach the remaining elements if one

16    of the elements is not satisfied.").

17        *a.    Significant Protectable Interest*

18        The employees assert that they have significant protectable interests insofar as their

19    constitutional rights to freedom of speech and association, as well as their due process rights, are

20    at stake in this litigation.  More specifically, they argue the MMC procedure threatens to infringe

21    their rights including "(1) the right to strike; (2) the right to decline to support financially the

22    monopoly bargaining representative imposed upon them; (3) the right for redress of workplace

23    grievances; (4) the right to vote on employment terms; (5) the right to dismiss an unwanted

24    monopoly bargaining representative; and (6) the freedom of labor."  (Doc. 13-1 at 3.)  The ALRB

25    defendants argue that the employees lack a significant protectable interest because the challenged

26    MMC statutes do not provide any role for individual employees.  As explained below, the Court

27    concludes that the employees have a significant protectable interest in this litigation.

28        "An applicant has a 'significant protectable interest' in an action if

1    (1) it asserts an interest that is protected under some law, and (2)
     there is a 'relationship' between its legally protected interest and the
2    plaintiff's claims." [*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th
     Cir. 1998)]. The relationship requirement is met "if the resolution of
3    the plaintiff's claims actually will affect the applicant." *Id.* at 410.
     The "interest" test is not a clear-cut or bright-line rule, because "[n]o
4    specific legal or equitable interest need be established." [*Greene v.
     United States*, 996 F.2d 973, 976 (9th Cir. 1993)]. Instead, the
5    "interest" test directs courts to make a "practical, threshold inquiry,"
     *id.,* and "is primarily a practical guide to disposing of lawsuits by
6    involving as many apparently concerned persons as is compatible
     with efficiency and due process," *County of Fresno v. Andrus*, 622
7    F.2d 436, 438 (9th Cir.1980) (internal quotation marks and citation
     omitted).

8

9    *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002).

10       The ALRB defendants are correct that the statute Wonderful challenges allows only "[a]n

11   agricultural employer or a labor organization certified as the exclusive bargaining agent of a

12   bargaining unit" to initiate an MMC process. Cal. Lab. Code § 1164. The statute does not

13   provide the individual employees with a similar right to negotiate or initiate negotiations for a

14   collective bargaining agreement with their employer. *Id.*; *see also Gerawan Farming, Inc. v.

15   Agric. Lab. Rels. Bd.*, 23 Cal. App. 5th 1129, 1210 (2018) ("It is well settled that the Act requires

16   an employer to meet and bargain exclusively with the bargaining representative of its

17   employees."). Even so, the practical nature of the interest test counsels against finding that the

18   employees lack significant protectable interests in this litigation. *See City of Los Angeles, Cal.*,

19   288 F.3d at 398. To conclude otherwise would make little sense in this context given that the

20   MMC provisions were enacted in part to "ameliorate the working conditions and economic

21   standing of agricultural employees." *Gerawan Farming, Inc. v. Agric. Lab. Rels. Bd.*, 3 Cal. 5th

22   1118, 1132 (2017).

23       The employees' asserted interest in dismissing an unwanted monopoly bargaining

24   representative, for example, is protected under California Labor Code section 1156.7 which

25   "provides a process by which employees may petition to decertify a labor organization as their

26   representative." *Id.* at 1131–32. The employees also allege their first amendment associational

27   interests would be implicated by the MMC process. The employees' proposed complaint alleges

28   that "every Board-imposed MMC contract includes a forced-unionism or so-called 'union

12

1   security' clause . . . requiring employees to surrender a portion of [their] wages to the union as

2   'union dues' or 'agency fees,' upon pain of discharge by the employer." (Doc. 13-1 at ¶ 46.)[6]

3   According to the employees, "California's law mandating compulsory arbitration and allowing

4   the ALRB to impose contract terms on certain parties, including a forced unionism or 'union

5   security' provision upon farmworkers violates the First Amendment rights of both free speech

6   and association." (*Id.* at ¶ 67.) By asserting an interest against the ALRB's *imposition* of union

7   security provisions via the MMC process, the employees have a significant protectable interest in

8   the litigation because resolution of Wonderful's claims could result in those union security

9   provisions ceasing to be imposed, which would have a direct economic impact on the employees.

10                         *b.    Practical Impairment*

11              However, the employees fail to advance any argument that the disposition of this action

12  may as a practical matter impair or impede their ability to protect their interest. Given that the

13  burden of establishing each element under Rule 24(a)(2) falls on the applicant, *Sweet v. Cardona*,

14  121 F.4th 32, 47–48 (9th Cir. 2024), the employees' motion to intervene as of right is denied.

15              2.    Permissive Intervention

16              A "district court has discretion to permit intervention when the movant presents '(1) an

17  independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and

18  fact between the movant's claim or defense and the main action.'" *Callahan v. Brookdale Senior*

19  *Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (quoting *Freedom from Religion*

20  *Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011)). However, "[i]n exercising its

21  _____

22  [6]  The employees substantiate this allegation with a statement from UFW National Vice President
     Armando Elenes, who testified that "all our contracts have some type of union security
23   language." (*Id.* at n.15 (quoting *Gerawan Farming, Inc. v. Agric. Lab. Rels. Bd.*, 52 Cal. App. 5th
     141, 169 (2020))). The ALRB defendants do not seriously dispute this allegation other than to
24   say, "union security clauses, which are not mandated by statute or regulation, are not implicated
     in this facial challenge to the MMC statutes." (Doc. 24 at 11 n.4.) But for purposes of this
25   motion, they are implicated to the extent the employees allege the MMC process permits
     such clauses to be routinely included in MMC-produced agreements as the employees allege. *Sw.*
26   *Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Courts are to take all
     well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or
27   answer in intervention, and declarations supporting the motion as true absent sham, frivolity or
     other objections.").
28

1    discretion, the court must consider whether the intervention will unduly delay or prejudice the

2    adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  For the reasons set forth

3    below, the Court concludes that the requirements for permissive intervention are satisfied and will

4    grant the employees' motion to intervene on that basis.

5         First, the employees' proposed complaint asserts claims under 42 U.S.C. § 1983, thereby

6    establishing an independent ground for jurisdiction under 28 U.S.C. § 1331.  Second, even though

7    the timeliness element is analyzed "more strictly" in the context of permissive intervention,

8    *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997), for the same

9    reasons as set forth in evaluating UFW's motion to intervene, the employees' motion to intervene,

10   which they filed just 35 days after the complaint was filed, is timely.  *See, e.g.*, *Hoopa Valley*

11   *Tribe v. United States Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1200 (E.D. Cal. 2022)

12   (finding motion to intervene filed four months after original complaint and "well before any

13   substantive matters had been heard or decided" timely).  Third, common questions of law and fact

14   are present as the employees challenge the same statutory scheme as Wonderful and both assert a

15   nearly identical "unlawful delegation" theory of liability on one of their respective Fourteenth

16   Amendment Due Process claims.  (Docs. 1 at ¶¶ 126–42; 13-1 at ¶¶ 70–78.)  Even though the

17   employees' proposed complaint asserts a First Amendment claim while Wonderful's complaint

18   does not, this additional claim would not result in undue delay or prejudice to the adjudication of

19   the original parties' rights, especially at this early stage in the litigation. Fed. R. Civ. P. 24(b)(3).

20   Finally, to the extent the ALRB defendants' arguments against permissive intervention were

21   premised on the employees' allegations regarding the MSP statute, the employees have

22   disavowed any such challenge to the MSP statute.

23       Accordingly, the employees' motion for permissive intervention is granted.

## CONCLUSION

25   For the reasons explained above:

26   1.     UFW's motion to intervene, (Doc. 11), is granted;

27   2.     UFW is ordered to file its answer (*see* Doc. 11-2) as a separate docket entry within

28          fourteen (14) days of entry of this order;

14

1        3.        The employees' motion to intervene under Rule 24(a)(2) is denied; however, the

2                   employees' motion to intervene under Rule 24(b), (Doc. 13), is granted;

3        4.        The employees are ordered to amend their proposed complaint as indicated, (Doc.

4                   32 at 2), and file it on the docket within fourteen (14) days of entry of this order;

5        5.        As UFW and the employees are now parties to this action, they will be afforded

6                   fourteen (14) days from the date of entry of this Order to respond, should they

7                   elect to do so, to the pending motion to dismiss (Doc. 41) filed by the ALRB on

8                   April 8, 2025;

9        6.        Any reply thereto shall be filed within ten (10) days from the date the responsive

10                  pleading was filed; and

11       7.        The ALRB's motion to dismiss (Doc. 41) is submitted without oral argument

12                  pursuant to Local Rule 230(g).  Accordingly, the hearing currently set for May 19,

13                  2025, is vacated.  The hearing may be reset if the Court determines that oral

14                  argument is warranted.

15

16

17   IT IS SO ORDERED.

18       Dated:   May 13, 2025                             

19                                          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28