1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MARK R. BECKINGTON, State Bar No. 126009
    Supervising Deputy Attorney General
3   KRISTI A. HUGHES, State Bar No. 235943
    SEBASTIAN BRADY, State Bar No. 330904
4   Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3592
6    Fax:  (415) 703-5480
     E-mail:  Sebastian.Brady@doj.ca.gov
7   Attorneys for Defendants

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10                              FRESNO DIVISION

11

12

|  |  |
|---|---|
| 13  **WONDERFUL NURSERIES LLC,** | Lead Case: 1:24-cv-01601-KES-CDB<br>Member Case: 1:25-cv-00577-KES-CDB |
| 14  Plaintiff, | **NOTICE OF MOTION TO DISMISS AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15  **CLAUDIA CHAVEZ, MARIA ESTER GUTIERREZ, FRANCISCO ANTONIO,** | |
| 16  **ERIK FERRER CHACON, MARIA CHACON, FLORENTINA TORRES** | |
| 17  **CRUZ, INES CRUZ, GLORIA GONZALES, LORENZO HERNANDEZ,** | Date:         September 22, 2025<br>Time:         1:30 p.m. |
| 18  **SELENE LIZZARAGA, YOLANDA MARTINEZ, ANA MOLINA, LETICIA** | Courtroom:  6<br>Judge:        The Honorable Kirk E. Sherriff |
| 19  **NAVARRO, ANA ORTIZ, MARIA C. PEDRO, JOSE RUIZ, MARIA C.** | Trial Date:   None set<br>Action Filed: December 30, 2024 |
| 20  **SANCHEZ, ANGELINA TORRES, ETELVERTO TORRES, and DOMATILA** | |
| 21  **VASQUEZ,** | |
| 22  Intervenor-Plaintiffs, | |
| 23  v. | |
| 24  **AGRICULTURAL LABOR RELATIONS BOARD; VICTORIA HASSID; in her** | |
| 25  **official capacity as Chairperson of the California Agricultural Labor Relations** | |
| 26  **Board; ISADORE HALL III, BARRY BROAD, RALPH LIGHTSTONE, and** | |
| 27  **CINTHIA N. FLORES, in her official capacities as Members of the California** | |
| 28  **Agricultural Relations Board; SANTIAGO** | |

AVILA-GOMEZ, in his official capacity as
Executive Secretary of the California
Agricultural Labor Relations Board; and
DOES 1 through 100 inclusive,

Defendants,

UNITED FARM WORKERS OF AMERICA,

Intervenor-Defendant.

WESTERN GROWERS ASSOCIATION
and OLIVE HILL GREENHOUSES, INC.,

Plaintiffs,

v.

AGRICULTURAL LABOR RELATIONS
BOARD; VICTORIA HASSID in her
official capacity as Chairperson of the
California Agricultural Labor Relations
Board; ISADORE HALL III, BARRY
BROAD, RALPH LIGHTSTONE, and
CINTHIA N. FLORES, in their official
capacities as Members of the California
Agricultural Labor Relations Board;
SANTIAGO AVILA-GOMEZ, in his official
capacity as Executive Secretary of the
California Agricultural Labor Relations
Board,

Defendants,

UNITED FARM WORKERS OF
AMERICA,

Intervenor-Defendant.

## NOTICE OF MOTION AND MOTION TO DISMISS

### TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

Please take notice that, on September 22, 2025 at 1:30 p.m. at the United States District

Court for the Eastern District of California, Fresno Division, or as soon thereafter as the matter

may be heard, Defendants California Agricultural Labor Relations Board, Victoria Hassid, in her

official capacity as Chairperson of the California Agricultural Labor Relations Board, Isadore

Hall III, Barry Broad, Ralph Lightstone, and Cinthia N. Flores, in their official capacities as

1

1   Members of the California Agricultural Relations Board, and Santiago Avila-Gomez, in his

2   official capacity as Executive Secretary of the California Agricultural Labor Relations Board

3   (collectively, "Defendants"), will and hereby do move to dismiss the consolidated complaint filed

4   by Plaintiff Wonderful Nurseries, LLC, Intervenor-Plaintiffs Claudia Chavez, *et al.*, and Plaintiffs

5   Western Growers Association and Olive Hill Greenhouses, Inc. under Fed. R. Civ. P. 12(b)(1)

6   and 12(b)(6). Specifically, Defendants move for dismissal under Rule 12(b)(1) because Plaintiffs'

7   Complaint fails to establish that their claims are justiciable, depriving this Court of subject matter

8   jurisdiction under Article III of the United States Constitution. Defendants further move for

9   dismissal under Rule 12(b)(6) because Plaintiffs' Complaint fails to state a claim upon which

10  relief may be granted.

11       Defendants' motion is based on this Notice of Motion, the accompanying Memorandum of

12  Points and Authorities, the attached declaration of Defendant Executive Secretary Santiago Avila-

13  Gomez, the oral arguments of counsel, and any other information the Court deems proper to

14  consider. Pursuant to the Court's standing order in civil cases, the Parties met and conferred

15  regarding the substance of this motion by videoconference on August 8, 2025. Counsel for

16  Defendants explained that they would seek to dismiss the Complaint both for jurisdictional

17  reasons and because the Complaint fails to state a claim. The Parties were unable to reach

18  agreement without Court intervention and meet and confer efforts have been exhausted.

19

20  Dated:  August 13, 2025                    Respectfully submitted,

21                                            ROB BONTA
                                             Attorney General of California
22                                            MARK R. BECKINGTON
                                             Supervising Deputy Attorney General
23                                            KRISTI A. HUGHES
                                             Deputy Attorney General

24

25                                            */s/ Sebastian Brady*
                                             SEBASTIAN BRADY
26                                            Deputy Attorney General
                                             *Attorneys for Defendants*

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................. 1

Background .................................................................................................................. 2

    I.     Statutory Framework ............................................................................ 2

    II.    Factual and Procedural Background .................................................... 6

         A.    Wonderful's MMC Proceeding ................................................. 6

         B.    Olive Hill's MMC Proceeding .................................................. 6

         C.    Procedural History .................................................................... 7

Legal standards ........................................................................................................... 8

    I.     Ripeness and Standing ......................................................................... 8

    II.    Legal Sufficiency and Facial Challenges ........................................... 8

Argument ..................................................................................................................... 9

    I.     Plaintiffs' Claims Are Not Justiciable................................................. 9

         A.    The Wonderful Plaintiffs Lack Standing .................................. 9

         B.    The WGA Plaintiffs' Claims Are Not Ripe ............................ 10

         C.    All Plaintiffs' Nominal Damages Claims Are Barred............ 12

    II.    None of Plaintiffs' Challenges to MMC States A Claim ................... 12

         A.    Issuance of Final MMC Orders does not violate Substantive Due
Process ................................................................................... 12

         B.    Substantive Due Process Does Not Guarantee Plaintiffs a Particular
Rate of Return ........................................................................ 15

         C.    The Mediator's Role Does Not Violate Due Process............... 16

         D.    The Cost Sharing Provision Does Not Violate Due Process ... 18

         E.    There Is No Unlawful Delegation ........................................... 19

         F.    MMC Does Not Violate Equal Protection ............................... 23

         G.    MMC Does Not Violate Employees' First Amendment Rights ... 26

         H.    MMC Does Not Violate the Individual Employees' Due Process
Rights ..................................................................................... 28

Conclusion ................................................................................................................ 30

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Adkins v. Children's Hospital*
261 U.S. 525 (1923) ................................................................................................ 13

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*
121 F.4th 1314 (D.C. Cir. 2024) ........................................................................... 11

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*
107 F.4th 934 (9th Cir. 2024) ................................................................................. 9

*Angelotti Chiropractic, Inc. v. Baker*
791 F.3d 1075 (9th Cir. 2015) .............................................................................. 23

*Axon Enter., Inc. v. FTC*
598 U.S. 175 (2023) ......................................................................................... 11, 12

*Bank Markazi v. Peterson*
578 U.S. 212 (2016) ............................................................................................... 15

*Boardman v. Inslee*
978 F.3d 1092 (9th Cir. 2020) .............................................................................. 28

*Boddie v. Connecticut*
401 U.S. 371 (1971) ............................................................................................... 18

*Bolden-Hardge v. Off. of Cal. State Controller*
63 F.4th 1215 (9th Cir. 2023) ............................................................................... 12

*Bova v. City of Medford*
564 F.3d 1093 (9th Cir. 2009) .............................................................................. 11

*Burstein v. Nonte*
688 F. Supp. 3d 314 (E.D. Va. 2023) ................................................................... 14

*California Teachers Association v. State of California*
20 Cal. 4th 327 (1999) ..................................................................................... 18, 19

*Calvary Chapel Bible Fellowship v. Cnty. of Riverside*
948 F.3d 1172 (9th Cir. 2020) ......................................................................... 17, 27

*Charles Wolff Packing Co. v. Court of Industrial Relations of State of Kansas*
(*Wolff I*)
262 U.S. 522 (1923) ..................................................................................... 13, 14, 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Charles Wolff Packing Co. v. Ct. of Indus. Rels. of Kansas* (*Wolff II*)
    267 U.S. 552 (1925) ............................................................................................. 15

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ............................................................................................. 11

*Colwell v. Dep't of Health & Hum. Servs.*
    558 F.3d 1112 (9th Cir. 2009) ............................................................................... 8

*Country-Wide Ins. Co. v. Harnett*
    426 F. Supp. 1030 (S.D.N.Y. 1977) ..................................................................... 14

*Dandridge v. Williams*
    397 U.S. 471 (1970) ............................................................................................. 24

*Doe v. Lawrence Livermore Nat. Lab'y*
    131 F.3d 836 (9th Cir. 1997) ............................................................................... 12

*Engquist v. Ore. Dep't of Agric.*
    553 U.S. 591 (2008) ....................................................................................... 24, 25

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*
    880 F.3d 450 (9th Cir. 2018) ............................................................................... 23

*F.C.C. v. Beach Commc'ns, Inc.*
    508 U.S. 307 (1993) ............................................................................................. 24

*FCC v. Consumers' Rsch.*
    145 S. Ct. 2482 (2025) ......................................................................................... 20

*Food & Drug Admin. v. All. for Hippocratic Med.*
    602 U.S. 367 (2024) ................................................................................... 9, 16, 29

*Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*
    528 U.S. 167 (2000) ............................................................................................... 9

*Ft. Smith Light & Traction Co. v. Bd. of Improvement of Paving Dist. No. 16*
    274 U.S. 387 (1927) ............................................................................................. 24

*Fuentes v. Shevin*
    407 U.S. 67 (1972) ............................................................................................... 20

*Gerawan Farming, Inc. v. ALRB*
    52 Cal. App. 5th 141 (2020) ................................................................................ 26

iii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Gerawan Farming, Inc. v. ALRB* (*Gerawan*)
    3 Cal. 5th 1118 (2017) ..................................................................................*passim*

4

*Hawaii Hous. Auth. v. Midkiff*
    467 U.S. 229 (1984) .................................................................................... 21

5

6

*Heller v. Doe by Doe*
    509 U.S. 312 (1993) .................................................................................... 24

7

*Hess Collection Winery v. ALRB*
    140 Cal. App. 4th 1584 (2006) .................................................................*passim*

8

9

*Huff & Puffers, LLC v. U.S. Food & Drug Admin.*
    No. 8:24-CV-02110-JVS-JDE, 2025 WL 1092696 (C.D. Cal. Feb. 27, 2025) ..................... 11

10

*In re Nektar Therapeutics Sec. Litig.*
    34 F.4th 828 (9th Cir. 2022)........................................................................ 8

11

12

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*
    730 F.3d 1024 (9th Cir. 2013)..................................................................... 19

13

14

*Janus v. AFSCME*
    585 U.S. 878 (2019) ...................................................................... 27, 28, 29

15

16

*Jensen v. Brown*
    131 F.4th 677 (9th Cir. 2025)..................................................................... 18

17

18

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*
    623 F.3d 1011 (9th Cir. 2010)..................................................................... 12

19

*Johnson v. Ryan*
    55 F.4th 1167 (9th Cir. 2022)................................................................. 28, 29

20

21

*Levald, Inc. v. City of Palm Desert*
    998 F.2d 680 (9th Cir. 1993)...................................................................... 12

22

23

*Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron & Metal Co.*
    335 U.S. 525 (1949)............................................................................ 13, 19

24

25

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ................................................................................ 8

26

27

*Marsh v. Cnty. of San Diego*
    680 F.3d 1148 (9th Cir. 2012)..................................................................... 28

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011) ........................................................................... 8, 9

*Mentele v. Inslee*
916 F.3d 783 (9th Cir. 2019) ................................................................................. 28

*Miller v. Schoene*
276 U.S. 272 (1928) ............................................................................................... 21

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024) ............................................................................................... 27

*Mount St. Mary's Hosp. of Niagara Falls v. Catherwood*
26 N.Y.2d 493 (1970) ............................................................................................ 14

*Nat'l Ass'n of Immigr. Judges v. Owen*
139 F.4th 293 (4th Cir. 2025) ............................................................................... 11

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ................................................................................... 8

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
439 U.S. 96 (1978) ................................................................................................. 21

*New York State Vegetable Growers Ass'n, Inc. v. James*
No. 23-CV-1044 (JLS), 2024 WL 1161115 (W.D.N.Y. Feb. 21, 2024) .............. 11

*Reyes v. N. Texas Tollway Auth.*
861 F.3d 558 (5th Cir. 2017) ................................................................................. 19

*Rice v. Vill. of Johnstown*
30 F.4th 584 (6th Cir. 2022) ................................................................................. 22

*Rizzo-Rupon v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO Dist. 141, Loc. 914*
822 F. App'x 49 (3d Cir. 2020) ............................................................................. 28

*Rodriguez Diaz v. Garland*
53 F.4th 1189 (9th Cir. 2022) ............................................................................... 18

*Rodriguez v. Cook*
169 F.3d 1176 (9th Cir. 1999) ............................................................................... 19

*Ry. Emp. Dep't v. Hanson*
351 U.S. 225 (1956) .......................................................................................... 27, 28

# TABLE OF AUTHORITIES
### (continued)

Page

*S. Cal. Healthcare Sys., Inc. v. City of Culver City*
No. 2:21-cv-05052-MCS-RAO, 2022 WL 1394751 (C.D. Cal. Jan. 19, 2022) .................... 16

*Savage v. Glendale Union High Sch.*
343 F.3d 1036 (9th Cir. 2003) .............................................................................................. 10

*Simon v. City & Cnty. of San Francisco*
135 F.4th 784 (9th Cir. 2025) .................................................................................................. 8

*Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*
4 F.4th 747 (9th Cir. 2021) ............................................................................................... 1, 12

*SmileDirectClub, LLC v. Tippins*
31 F.4th 1110 (9th Cir. 2022) ................................................................................................ 25

*St. Clair v. City of Chico*
880 F.2d 199 (9th Cir. 1989) ................................................................................................... 8

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*
108 F.4th 1128 (9th Cir. 2024) .............................................................................................. 10

*Tex-Cal Land Mgmt., Inc. v. ALRB*
24 Cal. 3d 335 (1979) .............................................................................................................. 5

*Thomas v. Anchorage Equal Rts. Comm'n*
220 F.3d 1134 (9th Cir. 2000) .......................................................................................... 10, 11

*Twitter, Inc. v. Paxton*
56 F.4th 1170 (9th Cir. 2022) ................................................................................................ 10

*United Farm Workers of America*
(2011) 37 ALRB No. 3 ..................................................................................................... 29, 30

*United States v. Hansen*
599 U.S. 762 (2023) ......................................................................................................... 26, 27

*United States v. Salerno*
481 U.S. 739 (1987) ........................................................................................................... 8, 16

*Wash. State Grange v. Wash. State Republican Party*
552 U.S. 442 (2008) ......................................................................................................... 15, 17

*West Coast Hotel Co. v. Parrish*
300 U.S. 379 (1937) ......................................................................................................... 13, 14

## TABLE OF AUTHORITIES
### (continued)

Page

*Withrow v. Larkin*
    421 U.S. 35 (1975) .................................................................................................. 17

**STATUTES**

United States Code
    Title 29 § 152(3) ....................................................................................................... 2
    Title 42 § 1983 ........................................................................................................ 12

Agricultural Labor Relations Act of 1975 (ALRA) ............................................... *passim*

California Labor Code
    § 1140 *et seq.* ........................................................................................................... 2
    § 1156(a) ........................................................................................................... 29, 30
    § 1156.7(c) ............................................................................................................. 30
    § 1156.37 ................................................................................................................. 6
    § 1164 ................................................................................................................... 20
    § 1164(a) ..................................................................................................... 3, 18, 20
    § 1164(a)(2) ........................................................................................................... 23
    § 1164(b) ..................................................................................................... 3, 20, 22
    § 1164(b)–(c) ........................................................................................................... 3
    § 1164(d) ..................................................................................................... 3, 16, 22
    § 1164(e) ................................................................................................. 4, 22, 25, 26
    § 1164(e)(2) ........................................................................................................... 26
    § 1164(e)(3) ........................................................................................................... 22
    § 1164.3 ................................................................................................................... 4
    § 1164.3(a) .......................................................................................................... 4, 22
    § 1164.3(b) .......................................................................................................... 4, 10
    § 1164.3(c) ............................................................................................................... 4
    § 1164.3(d) ............................................................................................................... 4
    § 1164.3(e) ............................................................................................................. 22
    § 1164.3(f)(3) ........................................................................................................... 5
    § 1164.5 ................................................................................................................. 22
    § 1164.5(a) .......................................................................................................... 5, 29
    § 1164.5(b) ............................................................................................................... 5
    § 1164.5(d) ............................................................................................................... 5

National Labor Relations Act .................................................................................... 2

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

**CONSTITUTIONAL PROVISIONS**

4

United States Constitution
    First Amendment.................................................................................... 7, 26, 27, 28

5

    Eleventh Amendment................................................................................................ 12

6

    Fourteenth Amendment.............................................................................. 9, 15, 24, 25
    Article III................................................................................................... 1, 10, 30

7

**COURT RULES**

8

Federal Rule of Civil Procedure

9

    Rule 12(b)(1)................................................................................................... 8, 10

10

    Rule 12(b)(6)...................................................................................................... 8

**OTHER AUTHORITIES**

11

California Code of Regulations, Title 8

12

    §§ 20400–20402................................................................................................ 18

13

    § 20400(b)......................................................................................................... 20
    § 20401.............................................................................................................. 3

14

    § 20402.............................................................................................................. 3

15

    § 20402(c)......................................................................................................... 20
    § 20402(d)......................................................................................................... 20

16

    § 20407............................................................................................................ 17
    § 20407(a)–(d).................................................................................................... 3

17

    § 20407(a)(2)................................................................................................ 16, 22

18

    § 20407(e).......................................................................................................... 3
    § 20408(b).......................................................................................................... 4

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2    The California Legislature enacted Mandatory Mediation and Conciliation ("MMC") to

3  create a form of mediation and interest arbitration in the agricultural industry, seeking to

4  "'ameliorate the working conditions and economic standing of agricultural employees, create

5  stability in the agricultural labor force, and promote California's economic well-being by

6  ensuring stability in its most vital industry.'" *Gerawan Farming, Inc. v. ALRB* (*Gerawan*), 3 Cal.

7  5th 1118, 1132–33 (2017) (quoting 2002 Cal. Stats. 7401). MMC has withstood various federal

8  constitutional challenges since its enactment. *See id.* at 1130; *Hess Collection Winery v. ALRB*,

9  140 Cal. App. 4th 1584, 1591 (2006). Plaintiffs now ask this Court to facially invalidate the entire

10  MMC system based largely on claims squarely rejected in these previous cases and earlier in this

11  very proceeding.

12    This Court should reject the invitation and dismiss this case. First, Plaintiffs' claims are not

13  justiciable. Plaintiff Wonderful Nurseries, LLC's ("Wonderful") MMC proceeding has terminated

14  and Wonderful and the individual employee plaintiffs face no foreseeable prospect of further

15  MMC proceedings. And Plaintiff Olive Hill Greenhouses, Inc.'s ("Olive Hill") MMC proceeding,

16  which is still ongoing, may never result in the final MMC order that Plaintiffs seek to challenge.

17  In each case, the mere initiation of MMC does not independently inflict any cognizable injury.

18  This Court therefore lacks Article III jurisdiction over these claims.

19    Second, Plaintiffs' claims fail on the merits. Plaintiffs' liberty of contract claim fails as a

20  matter of law, and this Court should reject Plaintiffs' effort to revive the long-dead *Lochner*-era

21  substantive due process approach to economic legislation. Plaintiffs' separate claim that a final

22  MMC order might deprive them of sufficient profit lacks support in the caselaw and is no basis

23  for facially invalidating MMC. And Plaintiffs' disagreements with the role of the MMC mediator

24  and their responsibility for part of the cost of mediation do not constitute constitutional violations.

25  "[G]overnment regulation does not constitute a violation of constitutional substantive due process

26  rights simply because the businesses or persons to whom the regulation is applied do not agree

27  with the regulation or its application." *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4

28  F.4th 747, 759 (9th Cir. 2021).

1    Plaintiffs' claim that MMC unlawfully delegates legislative authority fails because the

2    Agricultural Labor Relations Board ("ALRB" or "the Board") retains authority over all relevant

3    aspects of the MMC process. An employer or a union may request the initial referral, but the

4    Board determines whether the statutory prerequisites for referral are met, directs the parties to

5    mediation, and issues the final MMC order. Finally, there is no equal protection violation. The

6    referral process satisfies rational basis review, and Plaintiffs' class-of-one challenge is

7    inapplicable and fails on the merits.

8    This Court previously held that all these claims were unlikely to succeed in denying a

9    motion for preliminary injunction in the *Western Growers* consolidated case. *Wonderful*

10   *Nurseries LLC v. ALRB* (PI Op.), No. 1:24-cv-01601-KES-CDB, 2025 WL 1826109 (E.D. Cal.

11   July 1, 2025). The Consolidated Complaint offers no reason to reconsider this ruling. The only

12   claims before the Court for the first time are those raised by the individual Wonderful employees.

13   But, like the employer plaintiffs, the employees lack standing to raise these claims because the

14   Wonderful MMC proceeding has ended. And on the merits, their constitutional claims amount to

15   policy disagreements with MMC—and unionization more broadly—that run headlong into

16   binding precedent. This Court should dismiss the complaint with prejudice.

17   **BACKGROUND**

18   **I.    STATUTORY FRAMEWORK**

19   Fifty years ago, the California Legislature enacted the Agricultural Labor Relations Act of

20   1975 ("ALRA") to recognize and protect the collective bargaining rights of agricultural workers.[1]

21   *See* 1975 Cal. Stats. 4013, *codified at* Cal. Lab. Code § 1140 *et seq.*[2] It "established an elaborate

22   framework governing the right of agricultural workers to organize themselves into unions to

23   engage in collective bargaining with their employers," and created the Board to administer the

24   conduct of union elections and address unfair labor practices. *Gerawan*, 3 Cal. 5th at 1129–30.

25   Over time, however, it "became clear that the ALRA had not resulted in the widespread

26   adoption of collective bargaining agreements between agricultural employers and employees." *Id.*

---

27   [1] Agricultural workers were and are expressly excluded from the protections of the
     National Labor Relations Act. *See* 29 U.S.C. § 152(3).

28   [2] Unless otherwise indicated, all statutory citations are to the California Labor Code.

2

1    at 1132 (observing that in 2002, "agricultural employers had not agreed to a contract in about 60

2    percent of the cases where a labor union had been certified"). The Legislature concluded that

3    "there was 'a need . . . for a mediation procedure in order to ensure a more effective collective

4    bargaining process between agricultural employers and agricultural employees, and thereby more

5    fully attain the purposes of the [ALRA], ameliorate the working conditions and economic

6    standing of agricultural employees, create stability in the agricultural labor force, and promote

7    California's economic well-being by ensuring stability in its most vital industry.'" *Id.* at 1132–33

8    (quoting 2002 Cal. Stats. 7401). To that end, the Legislature amended the ALRA to include

9    MMC, a form of mediation and interest arbitration "'in which the terms and conditions of

10    employment'" for a particular bargaining unit of an agricultural employer "'are established by a

11    final and binding decision of an arbitrator.'" *Id.* at 1133.

12          Under MMC, if an agricultural employer and the certified union representing its

13    agricultural employees have been unable to reach a collective bargaining agreement 90 days after

14    the initial request to bargain, either side may file a petition with the Board asking it to refer the

15    parties to MMC. § 1164(a). The other side may file an answer contesting whether the criteria for

16    MMC are met. Cal. Code Regs. tit. 8, § 20401. The Board then assesses whether the relevant

17    criteria are met, including by holding an evidentiary hearing if necessary. *Id.* § 20402. If the

18    Board determines the relevant criteria are met, it "direct[s] the parties to mandatory mediation and

19    conciliation of their issues." § 1164(b). The parties then select a mediator, who will conduct a

20    mediation with the parties for an initial 30 days, with the option to extend for an additional 30

21    days. § 1164(b)–(c).

22          Ideally, the parties reach an agreement through mediation, thereby ending the MMC

23    process and the Board's involvement in their negotiations. *See* Cal. Code Regs. tit. 8, § 20407(e).

24    If, however, the parties are unable to resolve all their differences, the mediator issues a report that

25    "resolves" all remaining issues "and establishes the final terms of a collective bargaining

26    agreement." § 1164(d); *see* Cal. Code Regs. tit. 8, § 20407(a)–(d). The mediator's report must

27    "include the basis for the mediator's determination" of any disputed issues and "be supported by

28    the record." § 1164(d).

3

The ALRA guides the mediator's determination, requiring the mediator to consider certain specified criteria "commonly considered in similar proceedings," including: (1) the "stipulations of the parties," (2) the "financial condition of the employer," (3) the terms of collective bargaining agreements "covering similar agricultural operations," (4) wages, benefits, terms, and conditions of employment "in comparable firms or industries in geographical areas with similar economic conditions," and (5) the "average consumer prices for goods and services according to the California Consumer Price Index, and the overall cost of living, in the area where the work is performed." § 1164(e); *see Hess Collection Winery*, 140 Cal. App. 4th at 1607 (mediator "*must* apply" these factors).

This report does not have immediate effect; it must be ordered into effect by the Board itself. *See* § 1164.3. If the parties accept the mediator's report as a reasonable determination of disputed issues and decline the option to seek Board review, "then the mediator's report shall become a final order of the [B]oard," giving it legal effect. § 1164.3(b). But if either party is unsatisfied with the report, it may seek Board review of the mediator's determination. § 1164.3(a). During this review, the challenged portions of the report are not ordered into effect. § 1164.3(b).

In its review, the Board determines whether any portion of the report is (1) "unrelated to wages, hours, or other conditions of employment," (2) "based on clearly erroneous findings of material fact," or (3) "arbitrary and capricious in light of the mediator's findings of fact." § 1164.3(a), (c).[3] In making this determination, the Board may hold an evidentiary hearing. Cal. Code Regs. tit. 8, § 20408(b). Where it determines a party's challenge is correct, the Board must direct the mediator to modify the offending terms and issue a second report. § 1164.3(c). This second report becomes the Board's final order if neither party objects, or, if a party objects, is subject to further Board review before being ordered into effect. § 1164.3(d).

---

[3] This review is not "discretionary," as Plaintiffs assert. Consolidated Compl. (Compl.) ¶¶ 40, 46, 47, ECF No. 69. While Plaintiffs may be referring to the fact that the Board is only required to grant plenary review where a party has made a "prima facie case" that the report is deficient, § 1164.3(a), the Board must always address a petition for review.

4

1    If either party is still dissatisfied after Board review, it may pursue yet another level of

2    review, in either the California Court of Appeal or the California Supreme Court. § 1164.5(a).

3    The reviewing court examines the entire record to determine whether, among other grounds for

4    vacatur, the Board "acted without, or in excess of, its powers or jurisdiction," "[t]he order or

5    decision of the [B]oard was procured by fraud or was an abuse of discretion," or "[t]he order or

6    decision of the [B]oard violates any right of the petitioner" under the United States or California

7    Constitutions. § 1164.5(b).[4] The petitioning party can seek and obtain a stay of the MMC order

8    while its petition is pending if it posts the necessary bond. §§ 1164.5(d), 1164.3(f)(3).

9    Since its enactment, MMC has withstood multiple constitutional challenges. Almost 20

10   years ago, the California Court of Appeal rejected a claim that MMC violated a substantive due

11   process right to "freedom of contract," explaining that the *Lochner*-era "substantive due process

12   line of authority" plaintiffs there relied upon "has been 'completely repudiated.'" *Hess Collection*

13   *Winery*, 140 Cal. App. 4th at 1598–99. The court also held that MMC does not violate equal

14   protection since the various statutory factors guiding the mediator's consideration "reasonably

15   ensure that contracts of different employers will be similar." *Id.* at 1604.

16   More recently, the California Supreme Court similarly rejected a set of constitutional

17   challenges to the MMC process. *See Gerawan*, 3 Cal. 5th at 1130. It also held that the employer's

18   substantive due process theory had been "'completely repudiated.'" *Id.* at 1139. And it rejected an

19   equal protection claim, holding that MMC's "individualized determinations are rationally related

20   to the Legislature's legitimate interest in ensuring that collective bargaining agreements are

21   tailored to the unique circumstances of each employer," and that the statutory factors guiding the

22   mediator "further the MMC's purposes while minimizing arbitrary or irrational differences

23   between the collective bargaining agreements imposed by the MMC process on similarly situated

24   agricultural employers." *Id.* at 1144–45.

25

26   _____

27   [4] This review is not "discretionary." Compl. ¶ 98. Although the reviewing court has
     discretion over whether to summarily deny the writ petition or to set the matter for a hearing, the
     petition is always reviewed and addressed. *See Tex-Cal Land Mgmt., Inc. v. ALRB*, 24 Cal. 3d

28   335, 351 (1979).

5

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Wonderful's MMC Proceeding

Wonderful Nurseries LLC ("Wonderful") operates in Kern County, California. Compl. ¶ 17. In March 2024, its agricultural employees unionized with the United Farm Workers of America ("UFW"), and the Board certified the United Farm Workers of America ("UFW") as the bargaining representative for these employees. Compl. ¶¶ 51–53.[5] The UFW then requested to bargain with Wonderful over the terms and conditions of employment for Wonderful's represented employees. Compl. ¶ 53. When negotiations failed to produce a collective bargaining agreement, the UFW asked the Board to refer the parties to MMC. Compl. ¶ 57. The Board concluded that "[t]he UFW's request satisfies the statutory and regulatory criteria for referral to MMC" and referred the parties to MMC. Compl. Ex. 8, at 3, 6. That process began in earnest in December 2024. Compl. ¶ 65.

Then, in February 2025, Wonderful informed the UFW that it planned to drastically slash its newly unionized workforce and shutter nearly its entire operation. Compl. Ex. 11, 85–89. The UFW then asked the Board to withdraw its request for MMC and notified the arbitrator that it did not wish to proceed any further with MMC. Compl. ¶ 66. The Board issued an order terminating the matter, noting that "no further MMC proceedings are expected." Compl. ¶ 66; Compl. Ex. 12, at 92.

### B.    Olive Hill's MMC Proceeding

Olive Hill operates in San Diego County, California. Compl. ¶ 20. In January 2024, the Board certified the UFW as the exclusive representative for Olive Hill's agricultural employees based on its showing of majority support. Compl. ¶ 67; *see* § 1156.37. Olive Hill elected not to object to the certification. Compl. ¶ 23.

That same month, the UFW asked Olive Hill to bargain over the terms of a collective bargaining agreement. Compl. ¶¶ 24, 68. The parties met to bargain several times over the subsequent months, but were unable to reach an agreement. Compl. ¶ 25. On November 12, 2024,

---

[5] Wonderful's challenge to this certification is still proceeding before the Board, as is its state court lawsuit challenging the constitutionality of the method Wonderful's employees employed to elect the UFW as their bargaining representative. Compl. ¶¶ 63–64.

1  the UFW petitioned the Board to refer the parties to MMC. Compl. ¶ 25. Although Olive Hill

2  filed an answer objecting to the referral, the Board determined that the criteria for referral had

3  been met and referred the parties to MMC. Compl. ¶ 26; Ex. 14, at 101.

4      Olive Hill's MMC proceeding is ongoing. The parties are still in the mediation phase of

5  MMC, which the mediator has already extended once. Compl. ¶¶ 69–71.

6      **C.    Procedural History**

7      Wonderful initially sued in December 2024 and sought a preliminary injunction in February

8  2025. ECF Nos. 1, 22. Then, on March 3, 2025, after the ALRB had filed its opposition, ECF No.

9  27, Wonderful withdrew its motion because the UFW had withdrawn its request for MMC, ECF

10  No. 33. The ALRB then moved to dismiss, ECF No. 41, and, separately, the Court approved

11  intervention by a group of individual employees of Wonderful ("Individual Employees") as

12  plaintiffs and the UFW as a defendant, ECF No. 46.

13      Separately, Plaintiffs Western Growers Association and Olive Hill ("WGA Plaintiffs") filed

14  suit in the Southern District of California raising the same claims as Wonderful and moving for a

15  preliminary injunction raising the same arguments. ECF Nos. 1, 13, Case No. 3:25-cv-815 (S.D.

16  Cal.). Because of the overlap between the cases, that matter was then transferred to this Court and

17  related to Wonderful's case. ECF Nos. 21, 22, 27, Case No. 1:25-cv-577 (E.D. Cal.). This Court

18  then denied WGA Plaintiffs' preliminary injunction motion, finding that they were unlikely to

19  succeed on any of their claims. *Wonderful Nurseries LLC v. ALRB* (PI Op.), No. 1:24-cv-01601-

20  KES-CDB, 2025 WL 1826109 (E.D. Cal. July 1, 2025).[6] That same day, the Court consolidated

21  the two cases and directed the plaintiffs to file a consolidated complaint. ECF No. 62.

22      The operative consolidated complaint was filed on July 23, 2025. ECF No. 69. In it, all

23  Plaintiffs raise the same panoply of due process and equal protection challenges Wonderful and

24  the WGA Plaintiffs previously raised in their separate proceedings and that this Court addressed

25  in its PI ruling. Compl. ¶¶ 103–206. Separately, the Individual Employees raise two claims this

26  Court has not yet addressed, challenging MMC based on the First Amendment rights of freedom

27

28      _____
        [6] The deadline to appeal this ruling has now passed.

1    of speech and association and the Fourteenth Amendment's Due Process Clause. Compl. ¶¶ 207–

2    216.

3    **LEGAL STANDARDS**

4    **I.    RIPENESS AND STANDING**

5    Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of

6    constitutional standing and ripeness. *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th

7    Cir. 2011) (standing); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (ripeness).

8    "The burden of establishing ripeness and standing rests on the party asserting the claim." *Colwell*

9    *v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). Plaintiffs must show they

10   satisfy each of these "irreducible minimum" requirements "in the same way as any other matter

11   on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence

12   required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

13   561 (1992). At the motion to dismiss stage, the court accepts the material allegations in the

14   complaint as true and construes them in favor of the party asserting jurisdiction. *Maya*, 658 F.3d

15   at 1068. But "[i]n support of a motion to dismiss under Rule 12(b)(1), the moving party may

16   submit 'affidavits or any other evidence properly before the court.'" *Colwell*, 558 F.3d at 1121.

17   **II.    LEGAL SUFFICIENCY AND FACIAL CHALLENGES**

18   To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a plaintiff

19   must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Nektar*

20   *Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022). The Court may dismiss a complaint

21   "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

22   cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

23   "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount

24   successfully, since the challenger must establish that no set of circumstances exists under which

25   the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "In other words,

26   'Plaintiffs must show . . . that the [policy] is unconstitutional in every conceivable application.'"

27   *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025). The Ninth Circuit

28   routinely affirms dismissal of facial challenges under Rule 12(b)(6) where Plaintiffs fail to

8

1  establish that a challenged law is invalid under all circumstances. *See, e.g.*, *Am. Apparel &*

2  *Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 943–44 (9th Cir. 2024).

3                                    **ARGUMENT**

4  **I.    PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE**

5       **A.    The Wonderful Plaintiffs Lack Standing**

6       "'[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered

7  an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not

8  conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

9  defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

10  by a favorable decision.'" *Maya*, 658 F.3d at 1067. "[A] plaintiff must demonstrate standing

11  separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Serv.*

12  *(TOC), Inc.*, 528 U.S. 167, 185 (2000). Here, Wonderful and the Individual Employees seek

13  forward-looking injunctive and declaratory relief on their claims. Compl. at pp. 73–74. Because

14  they "seek[] prospective relief such as an injunction, [they] must establish a sufficient likelihood

15  of future injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

16  They fail to do so because their theory of harm rests on the existence of MMC proceedings or a

17  final MMC order and here, as they concede, Wonderful's MMC proceedings have been

18  terminated and the UFW has "given no indication that it intends to resume MMC proceedings,"

19  Compl. ¶ 66—which would require a new petition for referral to MMC that the Board would need

20  to independently evaluate.[7] Consequently, Wonderful lacks standing to raise its claims for

21  injunctive and declaratory relief, and the Employees lack standing to raise their claims for such

22  relief—including the First and Fourteenth Amendment claims (Counts 8 and 9) that are not

23  separately raised by either Wonderful or the WGA Plaintiffs.  *See* Compl. ¶¶ 207–216.

24

25

26
_____

27      [7] Relatedly, it appears that some of the Individual Employees no longer work for
Wonderful or its contractors, Compl. ¶ 19, and, in light of Wonderful's drastic workforce

28  reduction, *see* Compl. Ex. 11, at 85–89, it is not clear that any of them will remain Wonderful
employees.

**B.    The WGA Plaintiffs' Claims Are Not Ripe**

"Article III also requires that a plaintiff's claim be ripe for adjudication." *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024). Ripeness doctrine "'aims to avoid premature and potentially unnecessary adjudication.'" *Id.* The doctrine comprises two distinct components: constitutional ripeness and prudential ripeness. *Id.* The WGA Plaintiffs have not satisfied constitutional ripeness here.

Constitutional ripeness "'is synonymous with the injury-in-fact prong of the standing inquiry.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). Accordingly, plaintiffs must show that they "face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,'" and that their "alleged injury" is not "too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). The bulk of the WGA Plaintiffs' claims—their substantive due process challenge to MMC writ large, their reasonable rate of return challenge, their mediator/adjudicator combination challenge, their delegation challenge based on the final MMC order, and their equal protection class-of-one challenge—are not constitutionally ripe because they all focus on potential future injury from the imposition of a final MMC order and, as Plaintiffs acknowledge, the MMC process is ongoing. Compl. ¶ 71. And Olive Hill cannot be subject to a final MMC order until (1) the arbitration phase is completed; (2) the mediator files his report with the Board, which may never happen, *see* Avila-Gomez Decl. ISO Mot. to Dismiss (Avila-Gomez Decl.) ¶ 4 (explaining that just six of the nine matters referred to MMC since 2012 have resulted in a mediator's report adopted by Board decision)[8]; (3) the Board conducts its own review should the parties request it, which automatically stays the effect of the challenged provisions of the mediator's report, § 1164.3(b), and can take years, *see* Avila-Gomez Decl. ¶ 5; and, potentially, (4) judicial review of the MMC order is completed, during which time a party may obtain a stay of the order, §§ 1164.5(d), 1164.3(f)(3). Any final MMC order is thus a "'contingent future event[] that may not occur as anticipated, or indeed may not occur at all.'"

---

[8] Parties may include declarations in factual attacks on jurisdiction under Rule 12(b)(1). *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 & n.2 (9th Cir. 2003).

1    *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). The WGA Plaintiffs' claims are

2    merely "'hypothetical or abstract,'" *Thomas*, 220 F.3d at 1139, and premature because several

3    significant steps in the process remain before any final MMC order is imposed—if ever, *see*

4    *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (noting that "'allegations of *possible*

5    future injury' are not sufficient" and any threatened injury must be "'*certainly* impending'"); *see*

6    *also New York State Vegetable Growers Ass'n, Inc. v. James*, No. 23-CV-1044 (JLS), 2024 WL

7    1161115, at *3 (W.D.N.Y. Feb. 21, 2024) (holding equal protection challenge to analogous New

8    York law was not ripe where challenged process had not "resulted in collective-bargaining

9    agreements that affect similarly situated agricultural employers differently"), *aff'd*, No. 24-525-

10   CV, 2025 WL 547915 (2d Cir. Feb. 19, 2025).

11       In rejecting this argument at the preliminary injunction stage, this Court relied on "the

12   alleged injury of being subjected to the MMC process in the first place." PI Op. at *6. But the

13   *Axon* decision the Court and WGA Plaintiffs relied on for this conclusion does not apply here.

14   That decision made clear that "[w]hat makes the difference here is the nature of the claims and

15   accompanying harms that the parties are asserting." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192

16   (2023); *cf. Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1336 (D.C. Cir. 2024),

17   *cert. denied sub nom. Alpine Sec. Corp. v. Fin. Indus. Auth.*, No. 24-904, 2025 WL 1549780

18   (U.S. June 2, 2025) (*Axon* "does not say that every agency proceeding already underway must

19   immediately be halted because of an asserted constitutional flaw"). In *Axon*, the plaintiffs

20   "protest[ed] the 'here-and-now' injury of subjection to an unconstitutionally structured

21   decisionmaking process." 598 U.S. at 192. Plaintiffs here, by contrast, challenge "a specific part

22   of the agency's administrative process, which is distinguishable from claims challenging the very

23   structure or the existence of an agency." *Huff & Puffers, LLC v. U.S. Food & Drug Admin.*, No.

24   8:24-CV-02110-JVS-JDE, 2025 WL 1092696, at *4 (C.D. Cal. Feb. 27, 2025). "The ostensible

25   similarity between the petitioners in *Axon* and the present case—bringing a constitutional

26   challenge against an agency—does not make a 'here-and-now' injury." *Id. Axon* therefore cannot

27   establish Plaintiffs' injury. *See Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 312 (4th

28

1  Cir. 2025) (rejecting application of *Axon* where plaintiffs' "challenge is not a structural

2  constitutional challenge to the authority of" an agency).

3      **C.**    **All Plaintiffs' Nominal Damages Claims Are Barred**

4      As detailed, Wonderful and the Individual Employees lack standing to raise claims for

5  prospective relief, and none of WGA Plaintiffs' claims are ripe. Separately, all Plaintiffs' claims

6  for nominal damages are barred. Plaintiffs have sued a state agency and several state officials in

7  their official capacities, Compl. at p. 6, ¶ 34, and seek, among other things, nominal damages

8  under 42 U.S.C. § 1983, Compl. at p. 74. "But § 1983 does not provide a cause of action to sue

9  state entities or state officials in their official capacities." *Bolden-Hardge v. Off. of Cal. State*

10  *Controller*, 63 F.4th 1215, 1221 (9th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491

11  U.S. 58, 65–67, 71 (1989)).[9] Separately, the Eleventh Amendment bars suits against the State

12  seeking damages, including nominal damages. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*,

13  623 F.3d 1011, 1021 & n.4 (9th Cir. 2010). All Plaintiffs' claim for nominal damages must

14  therefore be dismissed.

15  **II.**    **NONE OF PLAINTIFFS' CHALLENGES TO MMC STATES A CLAIM**

16      **A.**    **Issuance of Final MMC Orders does not violate Substantive Due Process**

17      Plaintiffs claim the possible issuance of a final MMC order on Olive Hill and other

18  employers violates their substantive due process rights (Count 1). But "[i]n reviewing economic

19  legislation on substantive due process grounds, [courts] give great deference to the judgment of

20  the legislature." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir. 1993). In such

21  cases, a plaintiff "must show that the state's actions are 'clearly arbitrary and unreasonable,

22  having no substantial relation to the public health, safety, morals or general welfare.'"

23  *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021); *see* PI

24  Op. at *10 (same). Here, MMC was enacted to "'more fully attain the purposes of the [ALRA],

25  ameliorate the working conditions and economic standing of agricultural employees, create

26  stability in the agricultural labor force, and promote California's economic well-being by

---

    [9] By contrast, "[w]hen sued for *prospective injunctive relief*, a state official in his official capacity is considered a 'person' for § 1983 purposes." *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997).

12

1    ensuring stability in its most vital industry.'" *Gerawan*, 3 Cal. 5th at 1132–33 (quoting 2002 Cal.

2    Stats. 7401). Such ends are plainly within California's police power. *See, e.g.*, *West Coast Hotel*

3    *Co. v. Parrish*, 300 U.S. 379, 393 (1937) ("In dealing with the relation of employer and

4    employed, the Legislature has necessarily a wide field of discretion in order that there may be

5    suitable protection of health and safety, and that peace and good order may be promoted through

6    regulations designed to insure wholesome conditions of work and freedom from oppression.").

7    And "'the Legislature reasonably could have concluded that a mediation process followed by

8    binding arbitration in the event of a bargaining impasse would "correct" the ALRA's failure [to

9    promote collective bargaining agreements] and facilitate the adoption of first contracts.'" PI Op.

10   at *10 (quoting *Gerawan*, 3 Cal. 5th at 1141). "The Legislature also reasonably could have

11   believed that facilitating first contracts furthers the goal of 'ensuring stability' in the agricultural

12   industry.'" *Id.* (quoting *Gerawan*, 3 Cal. 5th at 1141). These possibilities "are supported by the

13   legislative history and are well-reasoned and sound." *Id.* MMC thus passes rational basis review.

14        Plaintiffs avoid this governing framework and rely heavily on a century-old trio of

15   *Lochner*-era substantive due process cases. Compl. ¶¶ 115–123. But these cases are no longer

16   good law and are inapplicable to boot. The core holding of *Charles Wolff Packing Co. v. Court of*

17   *Industrial Relations of State of Kansas* (*Wolff I*), 262 U.S. 522 (1923), was directly repudiated in

18   *Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron & Metal Co.*, where the

19   Court explained that *Wolff I*:

20        construed the due process clause as forbidding legislation to fix hours and wages, or
         to fix prices of products [and] relied on a distinction between businesses according to
21        whether they were or were not "clothed with a public interest." This latter distinction
         was rejected in *Nebbia v. People of State of New York*, 291 U.S. 502. That the due
22        process clause does not ban legislative power to fix prices, wages and hours as was
         assumed in the *Wolff* case, was settled as to price fixing in the *Nebbia* and *Olsen*
23        cases. That wages and hours can be fixed by law is no longer doubted since *West*
         *Coast Hotel Co. v. Parrish*, 300 U.S. 379; *United States v. Darby*, 312 U.S. 100, 125;
24        *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 187.

25   335 U.S. 525, 536 (1949) (citation omitted).

26        Moreover, the *Wolff Packing* trilogy expressly relied on *Adkins v. Children's Hospital*, 261

27   U.S. 525 (1923), *see Wolff I*, 262 U.S. at 534, but *Adkins* was overruled decades ago, *see West*

28   *Coast Hotel Co.*, 300 U.S. at 400. *Wolff I* relied on *Adkins* for its fundamental premise that

13

1   contractual liberty could only be regulated in "exceptional circumstances," such as where a

2   business implicates the public interest, *see* 262 U.S. at 534—the very principle the Court rejected

3   in *West Coast Hotel*, 300 U.S. at 391, 397–400; *see* PI Op. at *9.

4          For that reason, court after court has refused to rely on these cases. *See, e.g.*, *Mount St.*

5   *Mary's Hosp. of Niagara Falls v. Catherwood*, 26 N.Y.2d 493, 500 (1970) ("The underpinnings

6   for the view [expressed in the *Wolff* trilogy] concerning industries affected with a public interest

7   have, of course, since then been severely, if not fatally, weakened."); *Country-Wide Ins. Co. v.*

8   *Harnett*, 426 F. Supp. 1030, 1033 (S.D.N.Y. 1977) (explaining "[t]he Court has steadily rejected

9   the substantive due process approach exemplified by *Wolff* and *Dorchy*"), *aff'd*, 431 U.S. 934

10  (1977); *Burstein v. Nonte*, 688 F. Supp. 3d 314, 322 (E.D. Va. 2023) (noting, where plaintiff

11  relied on *Wolff*, that "[t]o the extent that the debtor is relying on substantive due process for his

12  constitutional right-to-contract claim, more recent Supreme Court cases have largely foreclosed

13  that argument" (citing *West Coast Hotel Co.*, 300 U.S. at 392)), *aff'd*, No. 23-2002, 2024 WL

14  4764261 (4th Cir. Nov. 13, 2024). Indeed, when an employer raised the same argument before the

15  California Supreme Court less than a decade ago, that court rejected Plaintiffs' precedent as based

16  on a "restrictive view of the police power [that] was completely repudiated by the high court a

17  decade later." *Gerawan*, 3 Cal. 5th at 1139.

18         In addition to having been discarded decades ago, Plaintiffs' precedent doesn't apply here

19  in the first place. "Unlike the Kansas statute [at issue in *Wolff*], the MMC provisions do not

20  prevent an employer and union from modifying their contract, prohibit employers from ceasing

21  operations, or prohibit employees from collectively quitting." PI Op. at *9; *see also id.* at *8

22  (explaining that statute at issue in *Wolff* prevent employers and employees "'from agreeing on

23  any change in the terms fixed therein, unless the agency approves'" and "permitted the agency to

24  compel certain businesses to continue their operations on terms fixed by the agency and

25  prohibited an employee from 'agree[ing] with his fellows to quit or combine with others to induce

26  them to quit'"). As this Court has explained, "[t]he Kansas statute imposed far more sweeping

27  and intrusive controls on wages and working conditions than the targeted dispute resolution

28  framework in the MMC provisions." *Id.* at *9. These cases therefore provide no basis for a facial

14

1  challenge to MMC. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–

2  50 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond

3  the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

4      Plaintiffs divine from the *Wolff Packing* trilogy another purportedly key holding, namely a

5  concern with "*selective* deprivations of liberty." Compl. ¶ 122; *see id.* ¶¶ 121–123. As an initial

6  matter, this was not the feature of the Kansas scheme that the *Wolff* Court took issue with; the

7  Court—as explained *supra*—was concerned with the act compelling employers to continue their

8  businesses against their wishes. *See Charles Wolff Packing Co. v. Ct. of Indus. Rels. of Kansas*

9  (*Wolff II*), 267 U.S. 552, 569 (1925) ("The system of compulsory arbitration which the act

10  establishes is intended to compel, and if sustained will compel, the owner and employees to

11  continue the business on terms which are not of their making. . . . Such a system infringes the

12  liberty of contract and rights of property guaranteed by the due process of law clause of the

13  Fourteenth Amendment."); *Wolff I*, 262 U.S. at 543 (explaining that non-common carriers like the

14  plaintiffs "may stop at will, whether the business be losing or profitable"); *see also* PI Op. at *8–

15  9. But more directly, "'laws that impose a duty or liability upon a single individual or firm are not

16  on that account invalid.'" *Bank Markazi v. Peterson*, 578 U.S. 212, 233 (2016). Concerns that

17  such narrow legislation is arbitrary sound in the Equal Protection Clause, *id.* at 234 n.27, a claim

18  Plaintiffs separately make—unsuccessfully, *see infra* at pp. 24–26.

19  **B.    Substantive Due Process Does Not Guarantee Plaintiffs a Particular Rate
         of Return**

20

21      Invoking cases related to public utility regulation and rent control ordinances, Plaintiffs

22  assert that agricultural employers have a freestanding constitutional right to a reasonable return on

23  their business (Count 2). Compl. ¶¶ 124–134. But Plaintiffs don't identify or rely on any authority

24  in the labor regulation context, *see id.*, and the Board is aware of none. Instead, Plaintiffs attempt

25  to shoehorn their claim into existing authority dealing with public utility ratemaking and rent

26  control. Compl. ¶¶ 131–134. This comparison "is dubious because the MMC provisions apply to

27  private agricultural employment, not public utility ratemaking, and they do not set any caps like a

28  rent control scheme." PI Op. at *10. Applying these cases here would be a novel constitutional

15

1    holding. *See S. Cal. Healthcare Sys., Inc. v. City of Culver City*, No. 2:21-cv-05052-MCS-RAO,

2    2022 WL 1394751, at *9 (C.D. Cal. Jan. 19, 2022) (rejecting attempt to import this theory, which

3    "relies on inapposite state insurance and rent control cases," in challenge to wage regulation),

4    *aff'd*, No. 22-55166, 2023 WL 234787 (9th Cir. Jan. 18, 2023); *see also* PI Op. at *10.

5        In any event, even Plaintiffs' lead case applied only rational basis, and the plaintiffs "have

6    not shown that the absence of an exit mechanism or a guaranteed rate of return renders the MMC

7    statute invalid under rational basis review." PI Op. at *10. The statute "provides protections

8    against confiscatory regulation by directing the mediator to consider '[t]he financial condition of

9    the employer and its ability to meet the costs of the contract in those instances where the

10   employer claims an inability to meet the union's wage and benefit demands.'" *Id.* (quoting

11   § 1164(e)(2)). And "if an employer believes its financial circumstances justify lower wages or

12   benefits—or adjustments tied to market crop prices—it can present that argument to the mediator

13   and the ALRB." *Id.* Moreover, "the MMC process includes notice, mediation, and a two-tiered

14   system of review, which collectively provides a sufficient procedural framework to satisfy due

15   process requirements." *Id.* In light of this extensive framework, there is no reason to believe that

16   any final MMC order will be unconstitutionally confiscatory, much less that *all* orders will be—

17   as Plaintiffs must show for their facial challenge. *See Salerno*, 481 U.S. at 745 ("[T]he challenger

18   must establish that no set of circumstances exists under which the Act would be valid.").

19       **C.    The Mediator's Role Does Not Violate Due Process**

20       Plaintiffs claim the MMC mediator's dual role as both a neutral facilitator and an arbitrator

21   (if the parties cannot agree on a contract) amounts to a constitutional violation because, Plaintiffs

22   hypothesize, the mediator will reach a decision based on confidential, off-the-record settlement

23   discussions with the parties (Count 4). *See* Compl. ¶¶ 162–163. That is not the case. The MMC

24   statute provides that "[t]he mediator's determination shall be supported by the record." § 1164(d).

25   The MMC regulations provide that "[a]ll evidence upon which the mediator relies" shall be part

26   of the record, that "[t]he mediator shall cite evidence in the record that supports the mediator's

27   findings and conclusions," and that "[a]ll communications taking place off the record . . . shall not

28   be the basis for any findings and conclusions in the mediator's report." Cal. Code Regs. tit. 8,

1    § 20407(a)(2). Moreover, "the regulations allow a party to file with the Board 'declarations that

2    describe pertinent events that took place off the record' in case of any alleged misconduct or

3    improper factfinding." *Gerawan*, 3 Cal. 5th at 1152 (quoting Cal. Code Regs. tit. 8, § 20408(a)).

4    And finally, it is not clear that the regulations even provide for the *ex parte* off-the-record

5    proceedings Plaintiffs are concerned about. *See* Cal. Code Regs. tit. 8, § 20407 (outlining

6    mediation process without providing for *ex parte* mediation proceedings).[10] Plaintiffs'

7    speculations to the contrary do not state a claim; facial challenges are limited to the text of the

8    statute, not how it may be applied in a particular case. *See, e.g.*, *Calvary Chapel Bible Fellowship

9    v. Cnty. of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020).

10       Indeed, Plaintiffs' claim appears to be that a mediator may engage in *ex parte* off-the-

11   record communications with a party, reach a particular decision based on those communications,

12   and then manufacture the record to provide on-the-record support for its ultimate conclusion, so

13   that its report would withstand Board and judicial review. *See* Compl. ¶ 167. "This argument is

14   unpersuasive because it is an entirely hypothetical argument as to what might occur in a specific

15   MMC proceeding and cannot support a facial challenge to the MMC statute." PI Op. at *12.

16   Facial challenges many not "speculate about hypothetical or imaginary cases." *Wash. State

17   Grange*, 552 U.S. at 449–50. That is doubly true in light of the "presumption of honesty and

18   integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Moreover,

19   this argument "has also already been considered and rejected by the California Supreme Court."

20   PI Op. *12 (citing *Gerawan*, 3 Cal. 5th at 1152).

21       Finally, to the extent Plaintiffs are challenging the fact that one individual serves as both the

22   mediator and the arbitrator, they cite to no cases identifying any constitutional concern with such

23   an arrangement. *See* Compl. ¶¶ 151–163. Whatever their theory, Plaintiffs' facial claim fails as a

24   matter of law.

25

26

27       [10] Nor do Plaintiffs allege that there have been any such communications in Olive Hill's
      MMC proceeding, meaning this challenge also is not justiciable as a matter of standing and
28    ripeness.

**D.    The Cost Sharing Provision Does Not Violate Due Process**

Plaintiffs do not make clear whether their challenge to MMC's cost-sharing provisions (Count 5) raises a substantive or procedural due process claim. Compl. ¶¶ 168–179. Their one cited precedent is a state court procedural due process case, *see* Compl. ¶ 179 (relying on procedural due process analysis in *California Teachers Association v. State of California*, 20 Cal. 4th 327, 348 (1999)), yet Plaintiffs fail to actually assert the elements of a procedural due process claim—namely, "'(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process.'" *Jensen v. Brown*, 131 F.4th 677, 699 (9th Cir. 2025).

Plaintiffs do not specifically identify a liberty or property interest, but assuming Plaintiffs mean to allege the deprivation of Olive Hill's money, they still do not allege a lack of process. Nor could they, since the MMC statute provides a process for determining which employers and unions meet the criteria for referral to MMC. *See* § 1164(a); *see also* Cal. Code Regs. tit. 8, §§ 20400–20402. Plaintiffs' sole cited precedent provides no support for this claim, either. That case held that a cost-sharing provision applicable where a teacher sought a hearing regarding their suspension or dismissal violated due process because it "deter[red] teachers from exercising their due process right to a hearing." *Cal. Tchrs. Ass'n*, 20 Cal. 4th at 357; *see also, e.g.*, *Boddie v. Connecticut*, 401 U.S. 371, 372, 380–83 (1971) (holding that requiring "payment of court fees and costs for service of process" to bring divorce actions violated due process as applied to indigent plaintiffs). As an initial matter, Plaintiffs don't attempt to relate the plaintiff-specific procedural due process balancing analysis in *California Teachers Association* to the balance of interests here. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022) ("'Due process is a flexible concept that varies with the particular situation.'"). But in any event, Plaintiffs' argument on this basis "is unpersuasive because the purpose of the cost sharing provision at issue in *California Teachers Ass'n* was to deter individual teachers from exercising their right to a hearing challenging their termination," whereas "[i]n contrast, there is no

1   indication of any improper purpose for the cost-sharing requirement under the MMC."[11] PI Op. at

2   *13. Instead, "[t]he MMC process is specifically designed to provide both employers and unions

3   with an accessible mechanism for resolving bargaining impasses, ensuring that the parties have a

4   meaningful opportunity to present their positions." *Id.* This was a rational choice for the

5   Legislature to make. *Id.*

6       If Plaintiffs instead are actually raising a substantive due process challenge, that claim

7   fares no better. For one thing, *California Teachers Association*—Plaintiffs' one cited precedent—

8   is entirely inapplicable. Moreover, economic legislation like this "will not be struck down on

9   substantive due process grounds so long as it 'implements a rational means of achieving a

10   legitimate governmental end.'" *Indep. Training & Apprenticeship Program v. Cal. Dep't of

11   Indus. Rels.*, 730 F.3d 1024, 1039 (9th Cir. 2013). And MMC's cost-sharing provision is

12   rationally related to a legitimate government end—defraying the cost of the MMC process. *See

13   Rodriguez v. Cook*, 169 F.3d 1176, 1181 (9th Cir. 1999) ("Budgetary concerns are a legitimate

14   governmental interest . . . ."); *see also, e.g.*, *Reyes v. N. Texas Tollway Auth.*, 861 F.3d 558, 565

15   (5th Cir. 2017) (rejecting substantive due process challenge to administrative fee related to

16   collection of unpaid tolls).

17      **E.**   **There Is No Unlawful Delegation**

18       Plaintiffs assert (Count 3) that the MMC process violates due process because it

19   "'abdicate[s] effective state control over state power [to] private parties.'" Compl. ¶ 142; *see

20   Compl. ¶ 11 (similar). Whether understood as a challenge to the initial referral to MMC or to any

21   eventual final MMC order, this claim fails.

22       Plaintiffs' complaint appears to largely focus on the initial MMC referral, asserting the

23   referral process is unconstitutional because "the union . . . decides whether, when, and which

24   employer it will target for forced contracting" and the Board does not exercise sufficient

25   discretion in adjudicating requests for referral to MMC. Compl. ¶ 142. But the initial referral is

26   not delegated in the first place. Plaintiffs' "characterization of MMC as allowing the *union* to

27         [11] Indeed, neither Olive Hill nor Wonderful were dissuaded by this provision from
participating in MMC, and Plaintiffs do not allege other employers would be. Compl. ¶¶ 65, 69–
28   71.

1    compel an agricultural employer to mediation is not accurate because '[e]ven if unions are more

2    likely to demand MMC than employers, the Legislature empowered the Board, not the parties, to

3    assess whether the statutory prerequisites are met before it orders MMC.'" PI Op. at *12 (quoting

4    *Gerawan*, 3 Cal. 5th at 1142). It is therefore just not the case, as Plaintiffs claim, that "the ALRB

5    has no say-so whatsoever as to which employer will be subjected to the coercive power of the

6    State." Compl. ¶ 149. While either party may request to initiate the MMC process once

7    negotiations have broken down and the parties need expert help to reach an agreement, s*ee*

8    §1164(a), it is the Board that ultimately determines whether the criteria for MMC are met and

9    directs the parties to MMC. *See* § 1164(b) (providing that where the criteria are met "*the* [*B*]*oard*

10    shall immediately issue an order directing the parties to mandatory mediation and conciliation of

11    their issues" (emphasis added)); *see also Gerawan*, 3 Cal. 5th at 1142 (explaining that the MMC

12    process begins only if "*the Board*, not the parties" determines that the statutory prerequisites are

13    met). Nor are Plaintiffs correct to claim that this determination is made "'uncontrolled by any

14    standard or rule prescribed by legislative action.'" Compl. ¶ 11. Clear criteria for referral to MMC

15    are set out in both statute and regulation, *see* § 1164; Cal. Code Regs. tit. 8, § 20400(b), and the

16    Board has fulsome procedures for determining whether the criteria are met—including

17    evidentiary hearings where necessary, *see* Cal. Code Regs. tit. 8, § 20402(c), (d).[12] While

18    Plaintiffs may wish these criteria were narrower or different, that policy disagreement does not

19    mean these criteria are nonexistent or constitutionally insufficient. *See* PI Op. at *12.

20        Plaintiffs are thus incorrect to assert that the referral process is a mere rubberstamp. *See* PI

21    Op. at *12. And even if they weren't, they miss the point: "the relevant legal question is not how

22    often" an agency rejects a private party's submission; "[i]t is sufficient in such schemes that the

23    private party's recommendations . . . cannot go into effect without an agency's say-so, regardless

24    of how freely given." *FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2509 (2025). That is the case

25    here, as it is the Board, and not either party, that refers the parties to MMC.

---

26    [12] Compare this process to the process in *Fuentes v. Shevin*, 407 U.S. 67 (1972), on which
Plaintiffs heavily rely. Compl. ¶¶ 142–144. There, under the challenged replevin statutes, "no
27    state official reviews the basis for the claim to repossession; and no state official evaluates the
need for immediate seizure[, and t]here is not even a requirement that the plaintiff provide any
28    information to the court on these matters." *Fuentes*, 407 U.S. at 93.

1    That a private party may request the initiation of the process leading to a final MMC order

2    does not change the analysis. Despite offering extensive legal argument in their complaint,

3    Plaintiffs identify no cases holding that a private party's opportunity to ask the government to

4    initiate a quasi-legislative action violates due process. In contrast, the Supreme Court has held

5    that requesting to initiate a legal action does not violate due process where the party initiating the

6    process does not determine the ultimate outcome. In *Miller v. Schoene*, for instance, the Court

7    addressed a Virginia statute that allowed property owners to request an entomologist's inspection

8    of local trees to determine whether they were diseased, and, if so, to require the landowner to

9    destroy the trees. 276 U.S. 272, 277–78 (1928). The property owners who requested the

10    inspection did "not determine the action of the state entomologist. They merely request[ed] him to

11    conduct an investigation," and the entomologist ultimately decided whether the trees had to be

12    destroyed. *Id.* at 281. Given this, the property owners' initiation of a legal process did not violate

13    due process. *Id.*; *see also Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 243 n.6 (1984) (upholding

14    constitutionality of Hawaii law allowing tenants to petition for condemnation of landlord's

15    property in order to force sale to tenants and rejecting claim that "due process prohibits allowing

16    lessees to initiate the taking process"). Even where the state is required to take the offending

17    action upon request—and only upon request—of a private party that "ha[s] unfettered discretion,"

18    the Supreme Court has held there to be no impermissible delegation. *See New Motor Vehicle Bd.*

19    *of Cal. v. Orrin W. Fox Co.*, 439 U.S. 96, 109 (1978) ("An otherwise valid regulation is not

20    rendered invalid simply because those whom the regulation is designed to safeguard may elect to

21    forgo its protection.").

22    Indeed, the California Supreme Court has rejected a similar delegation argument. *Gerawan*,

23    3 Cal. 5th at 1141–42. The employer there argued that "the MMC process is unconstitutionally

24    arbitrary because it allows a 'self-interested union to compel the regulation of individual

25    employers of its choosing.'" *Id.* But the Supreme Court recognized that either party could seek

26    MMC and the MMC process begins only if "*the Board*, not the parties" determines that the

27    statutory prerequisites are met. *Id.* at 1142. It held that "the fact that the MMC process is initiated

28    by a party does not make it arbitrary or irrational." *Id.*

21

Nor is the final MMC order delegated to the union. "[F]inal decisions resulting from [MMC] are made by the mediator, not the union, and are subject to procedural review safeguards." PI Op. at *11; *see also* Compl. ¶ 148 (recognizing this). Where the parties cannot agree on material aspects of a contract, the mediator prepares a report resolving the disputed issues on the basis of the record. *See* § 1164(d); Cal. Code Regs. tit. 8, § 20407(a)(2). The mediator—selected by the parties—must provide a reasoned basis in any report resolving differences between the parties. *See* § 1164(b), (d). The mediator must consider a host of non-exhaustive statutory factors, including "[t]he corresponding wages, benefits, and terms and conditions of employment in other collective bargaining agreements covering similar agricultural operations with similar labor requirements." § 1164(e)(3). These are not discretionary factors. *See Hess Collection Winery*, 140 Cal. App. 4th at 1607 ("A mediator crafting a collective bargaining agreement *must* apply the criteria set out in regulation 20407 and in section 1164, subdivision (e)."). In other words, the statute provides the mediator with more than a "little . . . guidance" to resolve the parties' disputed issues. *Rice v. Vill. of Johnstown*, 30 F.4th 584, 590 (6th Cir. 2022); *see Gerawan*, 3 Cal. 5th at 1145 ("These statutory factors . . . minimiz[e] arbitrary or irrational differences between the collective bargaining agreements imposed by the MMC process on similarly situated agricultural employers."). The statute provides further protection from arbitrary decision making, as it requires the Board to vacate any provision of a mediator's report that is, among other faults, "arbitrary and capricious in light of the mediator's findings of fact." § 1164.3(a). It shall also vacate the entire report where it finds misconduct by the mediator or that "the mediator's report was procured by corruption, fraud, or other undue means." § 1164.3(e). And either party may petition the California Court of Appeal or the California Supreme Court for further review of a final MMC order. *See* § 1164.5. In these circumstances, because the Board retains authority over both the initiation of MMC and the terms of any final MMC order, there is no delegation of coercive power that implicates due process concerns. As this Court has already held, "as reflected in the California Supreme Court's interpretation of the statute, the MMC provisions provide sufficient legislative direction to mediators." PI Op. at *11 (citing *Gerawan*, 3 Cal. 5th at 1148–49).

22

1  **F.    MMC Does Not Violate Equal Protection**

2     Plaintiffs advance (Count 6) two equal protection claims, challenging both referral to MMC

3  and the final MMC order. Compl. ¶ 186. Both claims are subject to rational basis review. *See*

4  *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) ("[I]t is well settled

5  that equal protection challenges to economic legislation . . . are evaluated under rational basis

6  review."); *see also* PI Op. at *13. This standard is "highly deferential"; the challenged

7  "'legislation is presumed to be valid and will be sustained if the classification drawn by the

8  statute is rationally related to a legitimate state interest.'" *Erotic Serv. Provider Legal Educ. &*

9  *Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018), as amended, 881 F.3d 792 (9th Cir.

10  2018). Applying rational basis review, the California Supreme Court squarely rejected both

11  claims in *Gerawan*, 3 Cal. 5th at 1140–46. Plaintiffs offer no persuasive grounds to depart from

12  these carefully considered holdings—or the holding of this Court. *See* PI Op. at *13–14.

13     **1.    The MMC Referral Does Not Violate Equal Protection**

14     Plaintiffs claim that the MMC statute arbitrarily distinguishes among those employers with

15  unionized agricultural employees based on the unions' decisions about where to request referral

16  to MMC. Compl. ¶¶ 186, 192, 195. But as an initial matter, and as just explained, unions do not

17  have "unilateral power to decide which employer will be targeted." Compl. ¶ 187; *see* PI Op. at

18  *12 (Plaintiffs' "characterization of MMC as allowing the union to compel an agricultural

19  employer to mediation is not accurate"). As just explained, *see supra* at p. 20, "the Legislature

20  empowered *the Board*, not the parties, to assess whether the statutory prerequisites are met before

21  it orders MMC." *Gerawan*, 3 Cal. 5th at 1142; *see* § 1164(a)(2) (setting out criteria) "In light of

22  these criteria and the Board's role in determining whether they are met, the fact that the MMC

23  process is initiated by a party does not make it arbitrary or irrational." *Gerawan*, 3 Cal. 5th at

24  1142. In fact, it is entirely rational for the Legislature to determine bargaining parties are best

25  positioned to alert the Board where MMC's requirements are met and MMC could be helpful. *Cf.*

26  PI Op. at *12 ("the criteria for referral that the California Legislature selected can be seen as a

27  rational choice to promote the legitimate interests of dispute resolution and achievement of first

28  contracts between agricultural employers and unions."). And as the California Supreme Court

23

1    explained, "the Legislature reasonably could have concluded" that the MMC process would

2    "facilitate" the adoption of contracts and that this, in turn, would "further[] the goal of 'ensuring

3    stability' in the agricultural industry." *Gerawan*, 3 Cal. 5th at 1141. This Court has already

4    recognized as much, holding that "[t]he State has a rational basis to apply the MMC process to

5    situations involving a first contract, where a union has been certified but the employer and union

6    have not timely reached an agreement after an initial request to bargain." PI Op. at *14.

7        Nor is it an equal protection problem that a law may impact regulated parties differently.

8    *See* PI Op. at *14 (noting *Gerawan* rejected an equal protection challenge to MMC based on the

9    fact that "not all employers may end up subject to MMC"). As the Supreme Court has reasoned,

10    "[i]n the area of economics and social welfare, a State does not violate the Equal Protection

11    Clause merely because the classifications made by its laws are imperfect." *Dandridge v.*

12    *Williams*, 397 U.S. 471, 485 (1970). On rational basis review, a classification does not fail just

13    because "it 'is not made with mathematical nicety or because in practice it results in some

14    inequality.'" *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993). Indeed, "the legislature must be

15    allowed leeway to approach a perceived problem incrementally." *F.C.C. v. Beach Commc'ns,*

16    *Inc.*, 508 U.S. 307, 316 (1993).

17        **2.    Final MMC Orders Do Not Violate Equal Protection**

18        Final MMC orders do not result in "arbitrary" "individual legislative acts." Compl. ¶ 182.

19    Such class-of-one claims require "the existence of a clear standard against which departures, even

20    for a single plaintiff, could be readily assessed." *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591,

21    602 (2008). But MMC orders are crafted based on individual employers' circumstances, as

22    Plaintiffs acknowledge. *See, e.g.*, Compl. ¶ 199 (mediators will make "individualized

23    determinations" because "no two employers are alike"); *see also* PI Op. at *14 (MMC

24    "accomplishes its purposes by empowering mediators to make individualized determinations

25    regarding the terms of particular collective bargaining agreements" (quoting *Gerawan*, 3 Cal. 5th

26    at 1144)). This makes sense, as "reasonable wages and benefits will necessarily vary across

27    company size, crop, and geographic region." PI Op. at *14 (quoting *Gerawan*, 3 Cal. 5th at

28    1144); *see also Ft. Smith Light & Traction Co. v. Bd. of Improvement of Paving Dist. No. 16*, 274

24

U.S. 387, 391 (1927) ("[T]he Fourteenth Amendment does not require the uniform application of legislation to objects that are different, where those differences may be made the rational basis of legislative discrimination."). The same criteria are used to determine the MMC terms for each employer, *see Hess Collection Winery*, 140 Cal. App. 4th at 1607 ("A mediator crafting a collective bargaining agreement *must* apply the criteria set out in regulation 20407 and in [§ 1164(e)]"), so the tailored MMC terms are not arbitrarily determined. *See* PI Op. at *14 ("[T]hese individualized determinations are rationally related to the Legislature's legitimate interest in ensuring that collective bargaining agreements are tailored to the unique circumstances of each employer.'" (quoting *Gerawan*, 3 Cal. 5th at 1144)); *see also Gerawan*, 3 Cal. 5th at 1145 ("These statutory factors . . . minimiz[e] arbitrary or irrational differences between the [CBAs] imposed by the MMC process on similarly situated agricultural employers."). This makes MMC orders the type of state action that, "by [its] nature involve[s] discretionary decision-making based on a vast array of subjective, individualized assessments" such that class-of-one claims cannot apply. *Engquist*, 553 U.S. at 603.

In any event, Plaintiffs can't establish the core elements of this type of claim—that Olive Hill and Wonderful have been "'[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122–23 (9th Cir. 2022). First, it is entirely unclear whether Wonderful or Olive Hill has been "treated differently" by a final MMC order because there is no final MMC order here. Second, it is not clear how Wonderful or Olive Hill are similarly situated with agricultural employers given that, as it acknowledges, "no two employers are alike." Compl. ¶ 185; *see SmileDirectClub, LLC*, 31 F.4th at 1123 (holding plaintiff fell "far short" of similarity requirement where it claimed it was "'unique'"). Third, the MMC statute sets out the reasons— that is, rational bases—final MMC orders may differ among employers. § 1164(e). And "the fact that collective bargaining agreements resulting from the MMC process are individualized is rational," since "'these individualized determinations are rationally related to the Legislature's legitimate interest in ensuring that collective bargaining agreements are tailored to the unique circumstances of each employer.'" PI Op. at *14 (quoting *Gerawan*, 3 Cal. 5th at 1144).

25

Plaintiffs don't appear to argue the statutory factors guiding final MMC orders—such as, for example, "[t]he financial condition of the employer," § 1164(e)(2)—constitute irrational reasons for treating different employers differently. Instead, Plaintiffs fear mediators could simply disregard these considerations because the statute provides that the mediator "'may consider'" these factors. Compl. ¶ 44 (quoting § 1164(e)). But a California court has held this "may" to be mandatory. *See Hess Collection Winery*, 140 Cal. App. 4th at 1607 ("[I]n this context, . . . 'may' means 'must.' A mediator crafting a collective bargaining agreement *must* apply the criteria set out in regulation 20407 and in section 1164, subdivision (e).").[13] In any event, even if a mediator disregards this requirement and enacts their own policy preferences instead of following the statute, and the Board and reviewing court nonetheless uphold the final MMC order, as Plaintiffs fear, *e.g.*, Compl. ¶ 44, that is a basis for an as-applied challenge—not the facial challenge Plaintiffs bring here.[14]

### G.    MMC Does Not Violate Employees' First Amendment Rights

The Employees alone raise a First Amendment challenge to MMC (Count 8), but they fail to state a claim. The only specific aspect of MMC that they address is the possibility that a final MMC order could contain a "'union security' provision." Compl. ¶ 208. Yet "there is nothing in the ALRA that compels the use of union security agreements," *Gerawan Farming, Inc. v. ALRB*, 52 Cal. App. 5th 141, 183 (2020), making this an inappropriate basis for a facial challenge. *See* PI Op. at *12 ("Facial challenges are limited to the text of the statute, not how it may be applied in a particular case." (citing *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020))). To overcome this fatal flaw, the Individual Employees claim their facial challenge turns on "'whether a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" Compl. ¶ 79 n.11 (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)). But this is the standard for *overbreadth* challenges under the First Amendment. *See United States v. Hansen*, 599 U.S. 762, 770 (2023) (defining

---

[13] The California Supreme Court acknowledged this holding in *Gerawan* but did not opine on the question. 3 Cal. 5th at 1145.

[14] Plaintiffs plead a cause of action for injunctive and declaratory relief (Count 7). Compl. ¶¶ 200–206. Because this claim depends on the success of its underlying constitutional claims, this claim fails for the same reasons.

1   standard for overbreadth challenges as whether "the statute 'prohibits a substantial amount of

2   protected speech' relative to its 'plainly legitimate sweep'"); *see also Moody*, 603 U.S. at 744

3   (quoting this standard from *Hansen*). And the analysis for overbreadth challenges is "unusual,"

4   particularly with respect to facial challenges. *Hansen*, 599 U.S. at 769. Because the Individual

5   Employees are not raising an overbreadth challenge here, they are instead subject to the normal

6   facial challenge standard and "'must establish that *no set of circumstances* exists under which the

7   [statute] would be valid.'" *Id.* (quoting *Salerno*, 481 U.S. at 745). And because they are "limited

8   to the text of the statute," *Calvary Chapel Bible Fellowship*, 948 F.3d at 1176—which, again,

9   does not require union security clauses—the Individual Employees cannot make that showing.

10          Putting this aside, union security clauses do not violate the First Amendment.[15] The

11  Supreme Court has long held that provisions requiring represented private sector employees to

12  either join a union or pay agency fees do not violate the First Amendment. *See Ry. Emp. Dep't v.*

13  *Hanson*, 351 U.S. 225, 238 (1956) (holding that "requir[ing] financial support of the collective-

14  bargaining agency by all who receive the benefits of its work . . . does not violate" the First

15  Amendment). The Individual Employees rely on *Janus v. AFSCME*, 585 U.S. 878 (2019), Compl.

16  ¶ 208, which struck down, on First Amendment grounds, the required payment of union dues by

17  public sector employees. But central to the Court's reasoning there was "the difference between

18  the effects of agency fees in public- and private-sector collective bargaining." *Janus*, 585 U.S. at

19  920. As the Court concluded, this is because "'decisionmaking by a public employer is above all

20  a political process' driven more by policy concerns than economic ones," *id.*, and negotiations

21  about "'state spending for employee benefits'" is a "'matter of great public concern,'" *id.* at 910–

22  11. Not so here, where a final MMC order would address only private-sector employers and

23  employees. Indeed, "*Janus* took pains to distinguish *Hanson*, emphasizing that the '*private-sector*

24  union shops' analyzed in *Hanson* presented 'a very different First Amendment question' than the

---

25  [15] Because there is no final MMC order in the Wonderful matter, this argument requires
26  shadowboxing against what a "union security" clause in such a hypothetical agreement might
    entail. *See* Black's Law Dictionary (defining "union-security clause" vaguely as "[a] provision in
    a union contract intended to protect the union against employer, nonunion employees, and
27  competing unions"). This alone drives home the lack of ripeness of this claim. For these purposes,
    though, Defendants assume Plaintiffs challenge a hypothetical clause that requires Wonderful
28  employees to either join a union or pay an agency fee.

1  public-sector unions at issue in *Janus*." *Rizzo-Rupon v. Int'l Ass'n of Machinists & Aerospace*

2  *Workers, AFL-CIO Dist. 141, Loc. 914*, 822 F. App'x 49, 50 (3d Cir. 2020) (emphasis in *Janus*);

3  *see Boardman v. Inslee*, 978 F.3d 1092, 1115 (9th Cir. 2020) (explaining that *Janus* "decid[ed]

4  that *public-sector* unions could not constitutionally compel non-union members to pay agency

5  fees" (emphasis added)). *Hanson* is thus still good law and controls here.

6       At other points, the Individual Employees also seem to be raising a First Amendment

7  challenge to the very notion of exclusive representation by a union. *See, e.g.*, Compl. ¶ 74

8  (claiming a final MMC order would "force[]" "Employees to associate with the UFW against

9  their will"). This claim fails because requiring a union to serve as a collective bargaining unit's

10  exclusive representative is "a relationship that does not itself impair associational rights."

11  *Boardman*, 978 F.3d at 1116. It does not violate the First Amendment to generally require

12  employees to be represented by a union—even one they do not support—as their exclusive

13  bargaining representative. *See Mentele v. Inslee*, 916 F.3d 783, 787 (9th Cir. 2019) (explaining

14  that "every circuit court to address the constitutionality of exclusive bargaining arrangements . . .

15  has concluded that these provisions do not violate the First Amendment").

16       **H.    MMC Does Not Violate the Individual Employees' Due Process Rights**

17       Procedural due process clause claims like the Individual Employees' require plaintiffs first

18  to show they were "deprived of a constitutionally protected liberty or property interest," and then

19  to show "that deprivation was [not] accompanied by sufficient procedural protections." *Johnson*

20  *v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). The Individual Employees initially contend their

21  due process rights are violated because MMC "excludes them from a government process—

22  MMC—that will decide legal and workplace rights." Compl. ¶ 213. But if they are asserting a

23  purely participatory interest—that is, a standalone interest in participating in MMC

24  proceedings—they do not show why participating in MMC proceedings is somehow "implicit in

25  the word 'liberty,'" as required for a protected liberty interest, *Marsh v. Cnty. of San Diego*, 680

26  F.3d 1148, 1155 (9th Cir. 2012), or why they have a vested property interest in participating in

27  MMC proceedings. And state law, which can at times trigger the Fourteenth Amendment's

28  procedural protections, *see Johnson*, 55 F.4th at 1180, does not provide any right to participate in

1    MMC, as the Individual Employees themselves recognize, Compl. ¶ 213. Perhaps, then, the

2    Individual Employees are relying on the purported future deprivation of their "legal and

3    workplace rights" by a future MMC order. Compl. ¶ 213; *see also id.* (describing the period

4    before an MMC order as "pre-deprivation"). Asserting rights at such a high level of generality

5    makes it difficult to pin down whether these rights are constitutionally protected in the first place,

6    but putting that aside, the Individual Employees do not show how any final MMC order would

7    necessarily deprive them of these rights, as they must for their facial challenge.

8         Even assuming the Individual Employees could show an actual deprivation, though, they

9    cannot show that such a deprivation "was [not] accompanied by sufficient procedural

10   protections." *Johnson*, 55 F.4th at 1179. Indeed, they misunderstand (or simply object to) the

11   nature of collective bargaining. While the Individual Employees may not individually participate

12   themselves in the MMC process, their interests are nevertheless represented—the UFW

13   represents the Individual Employees' interests during the entire MMC proceeding. *See*, *e.g.*,

14   § 1156(a) (elected representatives "shall be the exclusive representatives of all the agricultural

15   employees in such unit for the purpose of collective bargaining with respect to rates of pay,

16   wages, hours of employment, or other conditions of employment"). Far from the Individual

17   Employees' claim that workers "must depend on the employer to raise their rights in the MMC

18   proceedings," Compl. ¶ 93, the UFW represents *all* employees' rights, including the rights and

19   interests of nonmember employees. Though the UFW was selected by a majority of the

20   bargaining unit's employees as the certified bargaining representative, Compl. ¶ 53, the union

21   does not just work to further the majority's interests. Instead, the union has a "duty to represent

22   all employees fairly," *Janus*, 585 U.S. at 887, and may not "disregard or even work against"

23   nonmember employees' interests, *id.* at 901; *see also United Farm Workers of America* (2011) 37

24   ALRB No. 3 (detailing duty of fair representation under ALRA).

25        So if—in a hypothetical future MMC proceeding—an MMC final order were to contain

26   terms prejudicial to nonmember employees, as the Individual Employees posit here, *see* Compl.

27   ¶ 50, their union can petition for judicial review to fulfill its duty of fair representation. *See*

28   § 1164.5(a) ("a party may petition for a writ of review" of the Board's final order). The Individual

1    Employees likewise may file an unfair labor practice charge based on the purported breach of the

2    duty of fair representation by the union in the process. *See United Farm Workers of America*

3    (2011) 37 ALRB No. 3. And if the Individual Employees are dissatisfied with the MMC final

4    order or the UFW's representation, then—if enough of their fellow employees are similarly

5    dissatisfied—they may petition for decertification during the last year of the contract. *See*

6    § 1156.7(c) (allowing for a decertification petition during the last year of the contract when

7    petition is signed by thirty percent or more of employees in the bargaining unit); *see also*

8    *Gerawan*, 3 Cal. 5th at 1159 (acknowledging that dissatisfied employees can petition for

9    decertification of the union in the third year of contract's term).

10        Given the UFW's duty of fair representation to all employees, not just those who support

11   the UFW as the certified bargaining representative, there is no merit to the Employees' claims

12   that their rights are unprotected during the MMC process. Indeed, even if an MMC final order is

13   eventually imposed, the Individual Employees may still present grievances to the employer and

14   have those grievances adjusted, "without the intervention of the bargaining representative," as

15   long as the adjustment is not inconsistent with the order's terms. *See* § 1156(a).

16                                   **CONCLUSION**

17        The Court should grant Defendants' motion to dismiss in its entirety and dismiss Plaintiffs'

18   action either for lack of Article III jurisdiction or for failure to state a claim.

19

20

21

22

23

24

25

26

27

28

1  Dated:  August 13, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK BECKINGTON
Supervising Deputy Attorney General
KRISTI A. HUGHES
Deputy Attorney General


*/s Sebastian Brady*
SEBASTIAN BRADY
Deputy Attorney General
*Attorneys for Defendants*

SA2025300017

31

## CERTIFICATE OF SERVICE

Case Name: **_Wonderful Nurseries LLC v._**          Case No.    **1:24-cv-01601-KES-CDB**
             **_ALRB_**

I hereby certify that on August 13, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **NOTICE OF MOTION TO DISMISS AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

2. **DECLARATION OF SANTIAGO AVILA-GOMEZ IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 13, 2025, at San Francisco, California.

| | |
|---|---|
| M. Mendiola | _M. Mendiola_ |
| Declarant | Signature |

SA2025300017